UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. 2:18-cv-479-UA-UAM

SADIK BAXTER,

       Plaintiff,

vs.

WEXFORD HEALTH SOURCES, INC.;
DR. HEMPHILL; DR. BLANKENSHIP;
DR. C. BERRIOS, and RN JENKS

       Defendants.
_____/

**DEFENDANT'S, WEXFORD HEALTH SOURCES, INC.
MOTION TO DISMISS AMENDED COMPLAINT [DE 37]**

COMES NOW, Defendant, WEXFORD HEALTH SOURCES, INC. ("Wexford") pursuant to Fed.R.Civ.P. 12(b)(6), by and through the undersigned counsel, and files this its Motion to Dismiss Amended Complaint [DE 37] and states as follows in support thereof:

**MOTION**

1. The allegations in the Amended Complaint do not state viable claims against Wexford.

2. Therefore, the Amended Complaint against Wexford should be dismissed.

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**

Plaintiff, Sadik Baxter has been incarcerated since 2014 serving a life sentence in the Florida Department of Corrections ("FDOC") for Felony Murder. He claims to have suffered

a gunshot wound to the spinal cord and subsequently diagnosed by a urologist with urogenital and fecal retention, requiring him to self catheterize. [DE 37 at ¶ 10, 11]. Additionally, he claims to have been diagnosed by a urologist with interstitial cystitis and allergy to latex catheters, and accordingly that urologist ordered a specific treatment regiment. [DE 37 at ¶12].

Plaintiff alleges that he was housed at Charlotte CI beginning in January 2015, where Wexford was contracted to provide medical services. [DE 37 at ¶13]. He alleges to have had medical passes issued at his previous camp, Martin CI but when he saw medical at Charlotte CI, he was told his passes would not be honored. These passes allegedly required as follows: six nonlatex catheters per day; lubricant; nonlatex gloves; towelettes; a biohazard bag to dispose of the used material. [DE 37 at ¶17].

Plaintiff was seen by Dr. Hemphill on January 22nd, 2015 who, along with Nurse Jenks told him he would be given three catheters per week. [DE 37 at ¶19, 23]. On January 27, 2015, Plaintiff claims to have developed a large cyst on his "posterior trunk" which he attributes to reusing the same catheter. [DE 37 at ¶27]. On February 5, 2015, he was seen by Nurse Blankenship who spoke with Nurse Jenks, both who refused to provide him with the number of catheters he wanted. [DE 37 at ¶¶27-32]. On June 2, 2015, he was seen by Dr. Berrios, to whom he explained he was in severe pain he could barely walk or function on a daily basis. [DE 37 at ¶ 40]. According to Plaintiff, Dr. Berrios also refused to provide him the number of catheters that he wanted. [DE 37 at ¶ 41].Further, Plaintiff claims that Dr. Berrios retaliated against him for filing grievances by taking away his "cane stick." [DE 37 at ¶ 44].

Plaintiff has filed the following causes of action in this lawsuit: deliberate indifference against each of the medical personnel Dr. Hemphill, Nurse Blankenship, Dr. Berrios, and Nurse Jenks, collectively into one count (Count 1: Deliberate Indifference 8th Amendment); then individually against each of the same Defendants (Count 2: Blankenship; Count 3: Berrios; Count 4: Hemphill; Count 5: Jenks); Discrimination 14th Amendment against Wexford (Count 6); Retaliation 1st Amendment against what appears to be all Defendants collectively (Count 7); Intentional Infliction of Emotional Distress, against what appears to be all Defendants collectively (Count 8); Concert of Action, against what appears to be all Defendants collectively (Count 9); Aiding and Abetting, against what appears to be all Defendants collectively (Count 10); Negligent Infliction of Emotional Distress, against what appears to be all Defendants collectively (Count 11); Negligent Supervision, against all Defendants but Nurse Jenks (Count 12); General Negligence, against what appears to be all Defendants collectively (Count 13).

Plaintiff's Amended Complaint includes one dedicated count against Wexford, "Count Six: Discrimination 14th Amendment." [DE 37 ¶¶78-83]. Wexford is uncertain whether the other Counts against the individual defendants also include it by virtue of its ambiguous use of the terms "Defendant's [sic] all of them" (e.g. ¶88) or "the Defendant's [sic] concerted actions" (e.g. ¶92). It's confusing. We know Counts 1 through 5 do not include Wexford because they name the individual defendant medical providers by name. We know Count 6 is directly against Wexford itself. But, Count 7 through 13 all use the above-quoted language which would tend to imply that Wexford is somehow included in "Defendant's [sic] all of them." Yet, this is belied by the "Facts" section, specifically paragraphs 34, 35, 37, and 38 which appear to suggest that Wexford is liable for having

unconstitutional customs and policies, which would make more sense. Accordingly, if that's the case, Wexford would adopt the arguments made on behalf of Co-defendant, Nurse Jenks in her Motion to Dismiss the Amended Complaint filed contemporaneously herewith, as grounds to dismiss any allegations in the Amended Complaint that could be perceived as being against Wexford named collectively with the other Defendants.

In any event, if the Court is not inclined to dismiss the Amended Complaint for the arguments made below or incorporated herein, and reads the Amended Complaint to include Wexford the corporate entity in Counts 7 through 13, the allegations therein are so vague and ambiguous to Wexford that it cannot prepare a response and would accordingly move for a more definite statement under Fed.R.Civ.P. 12(e).

## II. ARGUMENT

### A.   IN COUNT 6: DISCRIMINATION 14TH AMENDMENT, PLAINTIFF FAILED TO ALLEGE WEXFORD HAD AN UNCONSTITUTIONAL POLICY OR CUSTOM WHICH VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.

Because Wexford is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Buckner v. Toro, 116 F.3d 450 (11th Cir. 1997) (extending the application of Monell to private corporations performing traditional public functions); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), abrogated in part by Bell Atl. Corp., 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000); see also Monell, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986).

The Brown Court also narrowed the test for causation when it stated:

[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

Gold v. City of Miami, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); see also Brown, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. Estelle, 429 U.S. at 106; Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In McDowell, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to

the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. See McDowell at 1286-87.

McDowell arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. Id. at 1289 (citing Monell, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " McDowell, 392 F.3d at 1290 (quoting Bd. of County Com'rs v. Brown, 520 U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." Id. "Rather, the incident must result from a demonstrated practice." *Id*. The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." Id.

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." Id. Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. Id. at 1290-91.

Next, the McDowell court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " Id. at 1291 (citing Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. Id.

Relying on the Supreme Court's decision in Brown, the McDowell court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' " Id. (quoting Brown, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " McDowell, 392 F.3d at 1291 (quoting Brown, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." Id. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential

medical concerns caused by its decision, and found the policy to be sound. Id. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." Id. at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. Id.

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. Id. The court recognized the Supreme Court's caveat in Brown that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. (quoting Brown, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the McDowell court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." Id. (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,'" that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting Brown at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." Id. at 1292 (quoting Brown at 411) (emphasis in original). The McDowell court stated:

Page **9** of **16**

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

Id. at 1292-93.

Plaintiff has two methods to establish Wexford's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Wexford. In either method, Plaintiff must prove more than an "isolated incident" but rather a "persistent" or "widespread" policy. There are no allegations to do so. Further, Plaintiff must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation. Plaintiff has failed to do so. Finally, (assuming solely for the sake of this argument) Plaintiff demonstrated he suffered an injury, there are no allegations that the policy was the "driving force" which lead to that injury. In sum, there is no claim stated that Wexford had an unconstitutional policy or custom which violated Plaintiff's constitutional rights. Accordingly, any deliberate indifference claim which may exist in Counts 1 through 4 against Wexford Health Sources, Inc. must be dismissed.

### B. COUNT 6 IS BARRED BY THE STATUTE OF LIMITATIONS.

Claims under Title II of the ADA is governed by the state statute of limitations for personal injury claims. A.R. v. Dudek, No. 1260460CIVZLOCHHUNT, 2016 WL 3221140, at *13 (S.D. Fla. June 9, 2016). In Florida, the statute of limitations for initiation of a lawsuit

under the ADA is four years. See Favreau v. Florida, Nos. 6:07-cv-723-Orl-22DAB, 6:07-cv-1210-Orl-22DAB, 2007 WL 3171331, at *6 (M.D. Fla. Oct. 25, 2007) ("statute of limitations in ADA cases are governed by Florida's four-year personal injury statute of limitations, Fla. Stat. § 95.11(3)") (quoting Moyer v. Walt Disney World Co., 146 F. Supp. 2d 1249, 1254 (M.D. Fla. 2000) ); See also Everett v. Cobb Cty. Sch. Dist., 138 F.3d 1407, 1409-10 (11th Cir.1998).

Moreover, the general federal rule is that a cause of action accrues, and sets the limitations clock running, when the plaintiff knows or should know that he has suffered the injury that forms the basis of his complaint, and who has inflicted the injury. Griffith v. Metro. Atlanta Rapid Transit Auth., 435 Fed. Appx. 830, 831 (11th Cir. 2011); Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).

The Plaintiff's claims against Wexford under the ADA are barred by the statute of limitations. He clearly alleges that Wexford "discriminated against Plaintiff solely by reason of his disability by withholding access to catheters. . . ." [DE 37 at ¶ 82]. Although arguably Plaintiff's cause of action accrued in January 2015, even if we took the last date he alleges an offense (June 2, 2015), he is still outside the statute of limitations. See [DE 37 at ¶39]. Plaintiff's original Complaint [DE 1], filed November 2018, has absolutely no mention of an ADA violation, thus any possible relation back is inapplicalble. The first ADA violation is mentioned in the proposed Amended Complaint [DE 34-1] attached to his June 27, 2019 Motion for Leave to File Amended Complaint [DE 34] which was not filed until July 9, 2019 [DE 37]. Hence, when he filed his Complaint in Amended Complaint, even if the proposed

Amended Complaint [DE 34-1] is deemed "filed," he did so more than four years after the accrual of his cause of action.

Statutes of limitation are created, in part, to allow a defendant a fair opportunity to rebut allegations by securing the use of witnesses before they resign from employment and move, die, or suffer from an inability to remember due to the passage of time. Since Plaintiff did not comply with the applicable statute of limitations, his suit is barred.

### C. PLAINTIFF HAS NOT ALLEGED FACTS WHICH SHOW HE HAS A DISABILITY UNDER THE ADA.

Under Title II of the ADA, it is provided that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. Sec. 12132.

To state a Title II claim under the ADA, a plaintiff generally must prove that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in, or denied benefits of, public entity's services, programs or activities, or was otherwise discriminated against by public entity; and (3) this exclusion, denial of benefit, or discrimination was by reason of plaintiff's disability. See, e.g., Bircoll v. Miami-Dade County, 480 F.3d 1072 (11th Cir. 2007); Gervarzes v. City of Port Orange, No. 6:12-cv-1126-Orl-37DAB, 2013 WL 610456 (M.D. Fla. 2013). It must be emphasized that Title II of the ADA prohibits public entities from discriminating against disabled individuals or denying them services *because of* their disabilities. Owens v. Secretary, Fla. Dept. of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (citing 42 U.S.C. § 12132) (emphasis added).

A disability is (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (1990). When evaluating whether an impairment substantially limits a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 911 (11th Cir. 1996).

It is important to understand that merely having an impairment does not make one disabled for purposes of the ADA. A plaintiff must also demonstrate that the impairment substantially limits a major life activity. Andino v. Fischer, 698 F.Supp.2d 362 (S.D. N.Y. 2010). An impairment is substantially limiting if it makes the individual unable to perform a major life activity, or it severely restricts the individual's ability to perform a major life activity as compared to the general population. Hale v. King, 642 F.3d 492 (5th Cir. 2011).

Finally, "major life activities" is defined as including, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Sec. 12102(2)(A). It also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. Sec. 12102(2)(B).

A thorough review of the Amended Complaint in this case establishes that Plaintiff does not allege the facts necessary to show that his need to use a catheter caused him to have a disability. The only allegations puts forth in this regard is that Wexford, by not providing as many catheters as he wanted somehow withheld his "access to urination though similarly situated individuals without bladder impairment have ready access to toilets." [DE 37 at ¶82]. But nowhere in the Amended Complaint does he allege that he could not urinate without the desired number of catheters. He does not describe being substantially limited in one or more of the major life activities. He plainly fails to specify any specific impairment, or any major life activity from which he is limited during those times. He doesn't even describe the nature of his disability. Accordingly, Count 6 must be dismissed.

### D.  ASSUMING PLAINTIFF HAS ALLEGED A DISABILITY, HE HAS NOT ALLEGED FACTS TO SHOW HIS TREATMENT WAS DELAYED BECAUSE OF HIS DISABILITY AS REQUIRED BY THE ADA.

Assuming Plaintiff were able to allege a disability in his Amended Complaint, he must also show that he was intentionally treated differently from other inmates *because of* his disability. See Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1077 (11th Cir. 1996). The reason is that to the extent that a plaintiff is basing his claims on his perceived lack of adequate medical care, claims under the ADA cannot be used to pursue medical malpractice claims. The ADA was not designed to subsume medical malpractice claims, and ADA claims do not arise from a defendant's failure to provide medical care to a disabled inmate. See Jones v. Rutherford, 546 F. App'x 808, 811-12 (11th Cir. 2013); Finn v.

Haddock, 459 F. App'x 833, 837-38 (11th Cir. 2012) (failure to provide adequate medical treatment does not violate the ADA or the Rehab Act). See also Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); Vick v. Core Civic, 329 F. Supp. 3d 426, 443 (M.D. Tenn. 2018) ("[C]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment but do not allege that the inmate was treated differently because of his or her disability."). Even assuming that Plaintiff successfully alleged a disability (which he did not) he does not provide any factual allegations that would even lead to an inference that he was discriminated against because, and as the direct result of, a disability. Rather, Plaintiff clearly claims that he did not receive as many catheters as he wanted due Wexford's custom and policy of "putting profit before patient." [DE 37 at ¶83. The cost of the catheters, or the desire to increase profits is clearly not associated with a condition of disability. Nothing in the Plaintiff's Amended Complaint would cause one to believe that he was treated worse than the other prisoners needing medical care *because he is disabled*. That is, non-disabled inmates freely received medical treatment, access to the toilets, etc. while disabled inmates did not. Hence, Plaintiff has not alleged facts to show that he was excluded from some prison program service, or activity *that the non-disabled prisoners could obtain.* Rather, he is complaining about a failure to treat due to cost, and a desire to increase profits, a complaint for which the ADA does not create a remedy. Accordingly, Count 6 must be dismissed.

### III.   CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Amended Complaint as it relates to Wexford should

be dismissed.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on **July 24, 2019**, and via US Mail to: Plaintiff, **Sadik Baxter,** DC# M8116, Tomoka CI, 3950 Tiger Bay Road, Daytona Beach, FL 32124-1098

        CHIMPOULIS & HUNTER, P.A.
        Attorneys for Def / Wexford Health Sources, Inc.
        150 South Pine Island Road - Suite 510
        Plantation, FL  33324
        Phone: (954) 463-0033 / FAX:  (954) 463-9562

        /s/ Alexander Dombrowsky
BY:   ALEXANDER DOMBROWSKY, ESQ.
        Florida Bar No.:  186260
        Email – adombrowsky@chimpoulishunter.com
        M. KATHERINE HUNTER, ESQUIRE
        Florida Bar No.:  981877
        Email – khunter@chimpoulishunter.com