UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. 2:18-cv-479-UA-UAM

SADIK BAXTER,

      Plaintiff,

vs.

WEXFORD HEALTH SOURCES, INC.;
DR. HEMPHILL; DR. BLANKENSHIP;
DR. C. BERRIOS, and RN JENKS

      Defendants.

_____/

**DEFENDANT'S, WEXFORD HEALTH SOURCES, INC.**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT [DE 48]**

COMES NOW, Defendant, WEXFORD HEALTH SOURCES, INC. ("Wexford") pursuant to Fed.R.Civ.P. 12(b)(6), by and through the undersigned counsel, and files this its Motion to Dismiss Second Complaint [DE 48] and states as follows in support thereof:

**MOTION**

1. The allegations in the Second Amended Complaint do not state a viable claim.

2. Therefore, the Second Amended Complaint should be dismissed.

**MEMORANDUM OF LAW**

## I.   INTRODUCTION

Plaintiff, Sadik Baxter has been incarcerated since 2014 serving a life sentence in the Florida Department of Corrections ("FDOC") for Felony Murder. He claims to have suffered a gunshot wound to the spinal cord and subsequently diagnosed by a urologist with urogenital and fecal retention, requiring him to self catheterize. [DE 48 at ¶ 10, 11]. Additionally, he claims to have been diagnosed by a urologist with interstitial cystitis and allergy to latex catheters, and accordingly that urologist ordered a specific treatment regiment. [DE 48 at ¶12].

Plaintiff alleges that he was housed at Charlotte CI beginning in January 2015, where Wexford was contracted to provide medical services. [DE 48 at ¶13]. He alleges to have had medical passes issued at his previous camp, Martin CI but when he saw medical at Charlotte CI, he was told his passes would not be honored. These passes allegedly required as follows: six nonlatex catheters per day; lubricant; nonlatex gloves; towelettes; a biohazard bag to dispose of the used material. [DE 48 at ¶17].

Plaintiff was seen by Dr. Hemphill on January 22nd, 2015. [DE 48 at ¶16]. Nurse Jenks said they would only give him 3 catheters per week [DE 48 at ¶21] and gave him three catheters. [DE 48  at ¶24]. On January 27, 2015, Plaintiff claims to have developed a large cyst on his "posterior trunk" which he attributes to reusing the same catheter. [DE 48 at ¶27]. On February 3, 2015, Plaintiff

declared a medical emergency for the cyst. [DE 48 at ¶28]. On February 5, 2015, he was seen by Nurse Blankenship who spoke with Nurse Jenks, both who refused to provide him with the number of catheters he wanted. [DE 48 at ¶¶29-33].  On June 2, 2015, he was seen by Dr. Berrios, to whom he explained he was in severe pain he could barely walk or function on a daily basis. [DE 48 at ¶40]. According to Plaintiff, Dr. Berrios also refused to provide him the number of catheters that he wanted. Id. He also alleges that Dr. Berrios then retaliated against him for filing grievances. [DE 48 at ¶44]. Plaintiff alleged that he placed sick call requests for urinary tract infections on two occasions, June 9 and June 16, 2016 for which he received antibiotics on June 17, 2016. [DE 48 at ¶46].

The Counts of Plaintiff's Second Amended Complaint are confusing. This Defendant has done it's best to make sense of and parse out the allegations of those Counts and to which Defendants they pertain. Nonetheless, as will be clearly shown below, this Court should dismiss Plaintiff's Second Amended Complaint [DE 48].

In the Second Amended Complaint, Plaintiff has filed the following causes of action: deliberate indifference against Dr. Hemphill, Nurse Blankenship, Dr. Berrios, and Nurse Jenks collectively (Count 1); Deliberate Indifference against Nurse Blankenship (Count 2); Deliberate Indifference against Dr. Berrios (Count 3); Deliberate Indifference against Dr. Hemphill (Count 4); Deliberate Indifference

against Nurse Jenks (Count 5); "Discrimination" under the ADA against **Wexford Health Sources, Inc**. (Count 6);   Retaliation First Amendment, against what appears to be **all Defendants collectively** (Count 7); Intentional Infliction of Emotional Distress, against what appears to be **all Defendants collectively** (Count 8); Concert of Action, against what appears to be **all Defendants collectively** (Count 9); Aiding and Abetting, against what appears to be **all Defendants collectively** (Count 10); Negligent Infliction of Emotional Distress, against what appears to be a**ll Defendants collectively** (Count 11); Negligent Supervision, against **all Defendants but Nurse Jenks** (Count 12); General Negligence, against what appears to be **all Defendants collectively** (Count 13).

Wexford Health Sources, Inc. is only directly named in "Discrimination" under the ADA against Wexford Health Sources, Inc. (Count 6) but apparently indirectly named in the other counts that just refer broadly to "Defendants."

Wexford moves this Court to dismiss all counts of the Second Amended Complaint that implicate it because Mr. Baxter fails to state a cause of action upon which relief can be granted.

## II.  ARGUMENT

### A.   PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE WEXFORD HAD AN UNCONSTITUTIONAL POLICY OR CUSTOM WHICH VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.

Because Wexford is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Buckner v. Toro, 116 F.3d 450 (11th Cir. 1997) (extending the application of Monell to private corporations performing traditional public functions); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), abrogated in part by Bell Atl. Corp., 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose

liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury."

Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000); see also Monell, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986).

The Brown Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific

policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

Gold v. City of Miami, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); see also Brown, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. Estelle, 429 U.S. at 106; Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In McDowell, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate

and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. See

McDowell at 1286-87.

McDowell arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. Id. at 1289 (citing Monell, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " McDowell, 392 F.3d at 1290 (quoting

Bd. of County Com'rs v. Brown, 520 U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." Id. "Rather, the incident must result from a demonstrated practice." *Id*. The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." Id.

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." Id. Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. Id. at 1290-91.

Next, the McDowell court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " Id. at 1291 (citing Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. Id.

Relying on the Supreme Court's decision in Brown, the McDowell court found that in a case "where the plaintiff claims that a municipality's facially valid

actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' " Id. (quoting Brown, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " McDowell, 392 F.3d at 1291 (quoting Brown, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." Id. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. Id. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." Id. at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. Id.

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. Id. The court recognized the Supreme Court's caveat in Brown that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. (quoting Brown, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the McDowell court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." Id. (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,' that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting Brown at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." Id. at 1292 (quoting Brown at 411) (emphasis in original). The McDowell court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates

that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

Id. at 1292-93.

Plaintiff has two methods to establish Wexford's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Wexford. In either method, Plaintiff must prove more than an "isolated incident" but rather a "persistent" or "widespread" policy. There is no evidence to do so. Further, Plaintiff must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation.  Plaintiff has failed to do so.  Finally, (assuming solely for the sake of this argument) Plaintiff demonstrated he suffered an injury, there is no evidence that the policy was the "driving force" which lead to that injury.   In sum, there is no evidence that Wexford had an unconstitutional policy or custom which violated Plaintiff's constitutional rights.  Accordingly, any deliberate indifference claim which may exist against Wexford Health Sources, Inc. must be dismissed.

### B. COUNT 6, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR "DISCRIMINATION" UNDER THE AMERICANS WITH DISABILITIES ACT.

In Count 6, Plaintiffs' suffers from a fundamental defect – alleged improper

medical treatment decisions cannot serve as the basis for claims under the Americans with Disabilities Act ("ADA"). Numerous circuit courts have arrived at this conclusion, including the Eleventh Circuit Court of Appeals. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (ADA was never intended to apply to decisions involving medical treatment); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners"); Shelton v. Arkansas Dep't of Human Servs., 677 F.3d 837, 843 (8th Cir. 2012) ("a claim based upon improper medical treatment decision[s] may not be brought pursuant to . . . the ADA"); Burger v. Bloomberg, 418 F.3d 882 (8th Cir. 2005) (ADA claim may not be based on medical treatment decisions); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act").

However, it is clear treatment is not being withheld from the Plaintiff. He admits to receiving catheters, just not as many as he would have liked. Thus, the true issue is what level of medical treatment is required under the Constitution, not whether plaintiffs are being discriminated against by the care being provided. Plaintiff's attempt to impose a standard of care on Wexford's medical services through an ADA cause of action is improper as suggested by the Supreme Court. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 603 n. 14 (1999) ("We do not in

this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities.")

Thus, Plaintiff's claims against Wexford in Count 6 must be dismissed.

### C.   COUNT 7, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR A FIRST AMENDMENT VIOLATION.

In Count 7, Plaintiff's allegations against Wexford fails to allege any "custom or policy" of Wexford as the cause of a constitutional violation. Assuming instead that the plaintiff is attempting to state First Amendment retaliation claim against Wexford, any such a claim is far too speculative to survive review under Iqbal, 556 U.S. at 678 and Twombly, 550 U.S. at 557 (where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"). Although retaliation against an inmate for filing grievances can violate the inmate's First Amendment rights, to succeed on such a claim, the plaintiff must demonstrate that the actions complained of were the direct result of his multiple prior lawsuits. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).

Here, the Plaintiff's complaint alleges no facts tending to show that his filing grievances caused Wexford to inform their medical staff to delay treatment or revoke passes. Plaintiff offers nothing to support a finding that even knew about the plaintiff's passes. Without facts showing that any of its medical staff delayed

treatment or revoked passes based on an instruction from Wexford, and as a result of his grievances, the plaintiff fails to state a First Amendment claim of retaliation. See e.g., Thomas v. Warner, 237 Fed.Appx. 435, 438 (11th Cir. 2007). Thus, Plaintiff's claims against Wexford in Count 7 must be dismissed.

### D. COUNT 8, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Under Florida law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Hercule v. Wendy's of N.E. Florida, Inc., No. 10-CIV-80248-MARRA, 2010 WL 1882181, *2-3 (S.D. Fla. May 11, 2010) quoting E. Airlines, Inc. v. King, 557 So. 2d 574, 575-76 (Fla. 1990) (quoting Restatement (Second) of Torts § 46 (1965)). The tort of intentional infliction of emotional distress is comprised of the following elements: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) The conduct caused emotional distress; and (4) The emotional distress was severe Stewart v. Walker, 5 So.3d 746, 749 (Fla. Dist. Ct. App. 2009) (quoting LeGrande v. Emmanuel, 889 So.2d 991, 994 (Fla. Dist. Ct. App. 2004)). For a defendant's conduct to qualify as

"extreme and outrageous," it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " <u>Metropolitan Life Ins. Co. v. McCarson</u>, 467 So. 2d 277, 278 (Fla. 1985) (<u>quoting</u> Restatement (Second) of Torts § 46 cmt.d (1965)). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." <u>Scheller v. Am. Med. Int'l, Inc.</u>, 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App. 1987) (<u>quoting</u> Restatement (Second) of Torts § 46 cmt. d (1965)). Courts decide the outrageousness of a defendant's conduct as a matter of law. <u>See</u>, e.g., <u>Vamper v. United Parcel Service, Inc.</u>, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998); <u>Johnson v. Thigpen</u>, 788 So.2d 410, 413 (Fla. Dist. Ct. App. 2001); <u>Gandy v. Trans World Computer Tech. Group</u>, 787 So. 2d 116, 119 (Fla. Dist. Ct. App. 2001); <u>Ponton v. Scarfone</u>, 468 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 1985). Courts also regularly find that racial discrimination allegations, whether delivered by verbal insults or intimidating acts, are not egregious enough to be "outrageous." <u>See</u> <u>Vance v. Southern Bell Tel. & Tel. Co.</u>, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (affirming dismissal of intentional infliction claim where the defendant allegedly hung rope noose over the plaintiff's desk, sabotaged her work, and otherwise racially discriminated against her); <u>Martinez v. Pavex Corp.</u>, 422 F. Supp. 2d 1284, 1296-97 (M.D. Fla. 2006) (repeated racial slurs and other alleged discriminatory treatment did not constitute outrageous conduct).

Plaintiff alleges that Defendants deliberately inflicted mental suffering on him by "denying adequate medical supplies. . .and. . . revoking his cane pass." [DE 48 at ¶96]. This does not rise to the level of outrageousness conduct necessary to support a claim for infliction of emotional distress. Accordingly, Count 8 must be dismissed.

### D.   COUNTS 9 AND 10, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR "CONCERT OF ACTION" OR "AIDING AND ABETTING."

As to Count 9 "Concert of Action" and Count 10 "Aiding and Abetting" the purported causes of action both rest upon the Defendants collectively committing Intentional Infliction of Emotional Distress as alleged in Count 8. See [DE 48 at ¶102 and ¶107]. For the reasons argued above in support of dismissing Count 8, any "Concert of Action" or "Aiding and Abetting" surrounding Intentional Infliction of Emotional Distress must likewise be dismissed.

### E.   COUNT 11, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff also fails to state a claim for negligent infliction of emotional distress. In Florida, claims for negligent infliction of emotional distress are governed by the "impact rule" designed to assure the validity of claims for emotional distress. Int'l Ocean Tel. Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893). The impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress

suffered must flow from physical injuries the plaintiff sustained in an impact." Southern Baptist Hosp. of Fla. v. Welker, 908 So.2d 317 (Fla. 2005). The judicially created rule attempts to safeguard the court from fictitious and speculative claims arising from purely emotional distress. Id. Though courts recognize exceptions to the impact rule, these exceptions arise in extraordinary circumstances where "the foreseeability and gravity of the emotional injury involved, and the lack of countervailing policy concerns, have surmounted the policy rational undergoing application of the impact rule." Rowell v. Holt, 850 So.2d 474, 478 (Fla. 2003).

Here, Plaintiff has failed to alleged any physical impact whatsoever. Accordingly, Plaintiff has not stated a cause of action for Negligent Infliction of Emotional Distress and Count 11 must be dismissed.

### F. COUNTS 12 AND 13, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR NEGLIGENT SUPERVISION OR GENERAL NEGLIGENCE.

As to Count 12 Negligent Supervision and Count 13 General Negligence, claims for medical negligence or medical malpractice are subject to the presuit screening requirements of Florida Statutes chapter 766. See Fla. Stat. 766.106(2)(a); Corbo v. Garcia, 949 So.2d 366, 368 (Fla. 2d DCA 2007). Florida Statute § 766.106(1)(a) defines a claim for "medical negligence" or "medical malpractice" as "a claim arising out of the rendering of, or the failure to render, medical care or services." J.B. v. Sacred Heart Hosp., 635 So.2d 945, 948-49

(Fla.1994). In order to qualify as a medical malpractice claim, the wrongful act alleged "must be directly related to the improper application of medical services and the use of professional judgment or skill." Quintanilla v. Coral Gables Hosp., Inc., 941 So.2d 468, 469 (Fla. 3d DCA 2006) (citing Lynn v. Mount Sinai Med. Ctr., Inc., 692 So.2d 1002, 1003 (Fla. 3d DCA 1997)). Furthermore, the alleged injury "must be a direct result of receiving medical care or treatment by the healthcare provider." Id. (citing Goldman v. Halifax Med. Ctr., Inc., 662 So.2d 367, 371 (Fla. 5th DCA 1995)). A plaintiff must follow the presuit screening requirements of Florida Statutes chapter 766 in order to rely on the medical negligence standard of care in proving his or her case. Fassy v. Crowley, 884 So.2d 359, 364 (Fla. 2d DCA 2004).

The decision to provide medical care and medication to a patient requires the exercise of medical judgment and skill. As such, a claim for negligence in failing to provide medical care and medication requires applying the standard of care for medical negligence. See Bailey v. Prison Health Services, Inc., No. 6:07-cv-1205, 2007 U.S. Dist. LEXIS 83456, *2-6, 2007 WL 3348268 (M.D. Fla. Nov. 9, 2007) (Plaintiff's claim against defendant prison health care provider for failing to provide her with prescribed medications while incarcerated was subject to the medical negligence presuit requirements because it directly related to medical and mental diagnosis, treatment, and care by a healthcare provider and required the

application of the prevailing professional standard of care for a healthcare provider).

The allegations of Counts 12 and 13 fit within the definition of "medical negligence" set forth in Florida Statutes Section 766.106(1)(a) and Plaintiff is required to follow the presuit requirements of chapter 766. These requirements must be met before maintaining a suit for medical negligence. Univ. of Miami v. Wilson, 948 So.2d 774, 776 (Fla. 3d DCA 2006). Because Plaintiff attempts to cast Count 10 and 11 of his Complaint as  claims for negligent supervision and simple negligence, Plaintiff does not allege he complied with the presuit requirements of chapter 766 for filing a medical negligence claim. Therefore, Counts 10 and 11 must be dismissed. See Hosp. Corp. of Am. v. Lindberg, 571 So.2d 446, 449 (Fla.1990) (in order to assert a medical negligence claim, a plaintiff must allege that he complied with Florida's presuit requirements).

Further, the two year statute of limitations on medical negligence has passed. See, e.g., Johnson v. McNeil, 278 F. App'x 866, 872 & n.3 (11th Cir. 2008) (affirming dismissal with prejudice for failure to comply with Chapter 766 where the statute of limitations had already expired); R.W. v. Armor Correctional Health Servs., Inc., 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) ("Since the applicable two-year statute of limitations for medical malpractice claims has expired. Plaintiff

has lost her right to cure her failure to file the pre-suit requirements.").

Accordingly, Counts 12 and 13 of the Complaint must be dismissed.

## III.   CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Complaint should be dismissed.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on **September 12, 2019**, and via US Mail to: Plaintiff, **Sadik Baxter,** DC# M8116, Tomoka CI, 3950 Tiger Bay Road, Daytona Beach, FL 32124-1098

CHIMPOULIS & HUNTER, P.A.
Attorneys for Def / Wexford Health Sources, Inc.
150 South Pine Island Road - Suite 510
Plantation, FL  33324
Phone: (954) 463-0033 / FAX:  (954) 463-9562

BY:   /s/ Alexander Dombrowsky
ALEXANDER DOMBROWSKY, ESQ.
Florida Bar No.:  186260
Email – adombrowsky@chimpoulishunter.com
M. KATHERINE HUNTER, ESQUIRE
Florida Bar No.:  981877
Email – khunter@chimpoulishunter.com