UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. 2:18-cv-479-UA-UAM

SADIK BAXTER,

      Plaintiff,

vs.

WEXFORD HEALTH SOURCES, INC.;
DR. HEMPHILL; DR. BLANKENSHIP;
DR. C. BERRIOS, and RN JENKS

      Defendants.

_____/

## DEFENDANT'S, DENISE JENKS, RN
## MOTION TO DISMISS SECOND AMENDED COMPLAINT [DE 48]

COMES NOW, Defendant, DENISE JENKS, RN ("Nurse Jenks") pursuant to Fed.R.Civ.P. 12(b)(6), by and through the undersigned counsel, and files this its Motion to Dismiss the Second Amended Complaint [DE 48] and states as follows in support thereof:

## MOTION

1.     The allegations in the Second Amended Complaint do not state a viable claim.

2.     Therefore, the Second Amended Complaint should be dismissed.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Plaintiff, Sadik Baxter has been incarcerated since 2014 serving a life sentence in the Florida Department of Corrections ("FDOC") for Felony Murder. He claims to have suffered a gunshot wound to the spinal cord and subsequently diagnosed by a urologist with urogenital and fecal retention, requiring him to self catheterize. [DE 48 at ¶ 10, 11]. Additionally, he claims to have been diagnosed by a urologist with interstitial cystitis and allergy to latex catheters, and accordingly that urologist ordered a specific treatment regiment. [DE 48 at ¶12].

Plaintiff alleges that he was housed at Charlotte CI beginning in January 2015, where Wexford was contracted to provide medical services. [DE 48 at ¶13]. He alleges to have had medical passes issued at his previous camp, Martin CI but when he saw medical at Charlotte CI, he was told his passes would not be honored. These passes allegedly required as follows: six nonlatex catheters per day; lubricant; nonlatex gloves; towelettes; a biohazard bag to dispose of the used material. [DE 48 at ¶17].

Plaintiff was seen by Dr. Hemphill on January 22nd, 2015. [DE 48 at ¶16]. Nurse Jenks said they would only give him 3 catheters per week [DE 48 at ¶21] and gave him three catheters. [DE 48  at ¶24]. On January 27, 2015, Plaintiff

claims to have developed a large cyst on his "posterior trunk" which he attributes to reusing the same catheter. [DE 48 at ¶27]. On February 3, 2015, Plaintiff declared a medical emergency for the cyst. [DE 48 at ¶28]. On February 5, 2015, he was seen by Nurse Blankenship who spoke with Nurse Jenks, both who refused to provide him with the number of catheters he wanted. [DE 48 at ¶¶29-33].  On June 2, 2015, he was seen by Dr. Berrios, to whom he explained he was in severe pain he could barely walk or function on a daily basis. [DE 48 at ¶40]. According to Plaintiff, Dr. Berrios also refused to provide him the number of catheters that he wanted. Id. He also alleges that Dr. Berrios then retaliated against him for filing grievances. [DE 48 at ¶44]. Plaintiff alleged that he placed sick call requests for urinary tract infections on two occasions, June 9 and June 16, 2016 for which he received antibiotics on June 17, 2016. [DE 48 at ¶46].

The Counts of Plaintiff's Second Amended Complaint are confusing. This Defendant has done it's best to make sense of and parse out the allegations of those Counts and to which Defendants they pertain. Nonetheless, as will be clearly shown below, this Court should dismiss Plaintiff's Second Amended Complaint [DE 48].

In the Second Amended Complaint, Plaintiff has filed the following causes of action: deliberate indifference against Dr. Hemphill, Nurse Blankenship, Dr. Berrios, and Nurse Jenks collectively (Count 1); Deliberate Indifference against

Nurse Blankenship (Count 2); Deliberate Indifference against Dr. Berrios (Count 3); Deliberate Indifference against Dr. Hemphill (Count 4); Deliberate Indifference **against Nurse Jenks** (Count 5); "Discrimination" under the ADA against Wexford Health Sources, Inc. (Count 6);   Retaliation First Amendment, against what appears to be **all Defendants collectively** (Count 7); Intentional Infliction of Emotional Distress, against what appears to be **all Defendants collectively** (Count 8); Concert of Action, against what appears to be **all Defendants collectively** (Count 9); Aiding and Abetting, against what appears to be **all Defendants collectively** (Count 10); Negligent Infliction of Emotional Distress, against what appears to be a**ll Defendants collectively** (Count 11); Negligent Supervision, against **all Defendants but Nurse Jenks** (Count 12); General Negligence, against what appears to be **all Defendants collectively** (Count 13).

Nurse Jenks moves this Court to dismiss all counts of the Second Amended Complaint that implicate her because Mr. Baxter fails to state a cause of action upon which relief can be granted.

**II.  ARGUMENT**

   **A.  PLAINTIFF FAILED TO ALLEGE NURSE JENKS ACTED WITH DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEED.**

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' which is prohibited by the Eighth Amendment." Harris v. Leder, 519 Fed.Appx. 590, 595 (11th Cir. 2013) (citing

Estelle v. Gamble, 429 U.S. 97, 104, (1976) (internal quotation marks omitted)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted). "In either of these situations, the medical need must be 'one that if left unattended, 'pose[es] a substantial risk of serious harm.'" Farrow, 320 F.3d at 1243 (citation omitted). Deliberate indifference requires more than negligence, but it is unnecessary to show a defendant intended to cause harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm. Wilson v. Seiter, 501 U.S. 294 (1991). The Supreme Court clarified the deliberate indifference standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the indifference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer 511 U.S. at 837.

Combining the standards from Farmer and Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth

Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243. Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.' " Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243). For example, medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ). "A 'complaint that a

physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.' " Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at 1176).

Put simply, an "official acts with deliberate indifference when he or she knows that

an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." McElligott, 182 F.3d at 1255 (citing Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997) ); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989).

Additionally, a difference of opinion with medical staff about the proper course of treatment does not support a claim for deliberate indifference. Price v. Cameron, No. 2:10-CV-578-FTM-99, 2012 WL 3536795, at *6 (M.D. Fla. Aug. 14, 2012); (citing Palazon v. Sec'y Dep't of Corr., 361 F. App'x 88, 89 (11th Cir.2010) (quoting Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir.1995)(whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Harris, 941 F.2d at 1505 (a difference of medical opinion between the prison's medical staff and the inmate about the latter's course of treatment will not support a claim of cruel and unusual punishment).

Here, Plaintiff's Amended Complaint includes numerous references to his encounters with medical personnel and the medical treatment he received. Although Plaintiff disagreed with the number of urinary catheters he received, he admits they were ordered, and Plaintiff admits to receiving them. Simply because Plaintiff wanted more catheters does not rise to the level of a violation of his constitutional rights. Accordingly, Count 1 and Count 5 against Nurse Jenks must be dismissed.

### B.   COUNT 7, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR A FIRST AMENDMENT VIOLATION.

In Count 7, Plaintiff's attempt to state First Amendment retaliation claim against Nurse Jenks is far too speculative to survive review under Iqbal, 556 U.S. at 678 and Twombly, 550 U.S. at 557 (where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"). Although retaliation against an inmate for filing grievances can violate the inmate's First Amendment rights, to succeed on such a claim, the plaintiff must demonstrate that the actions complained of were the direct result of his multiple prior lawsuits. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).

Here, the Plaintiff's Amended Complaint states "Defendant's [sic] all of them acting in a concerted effort to delay treatment and provide inadequate medical supplies, which lead to Plaintiff developing infections, therefore Nurse

Thompson's a non-party and Defendant Blankenship's statements, and the revocation of his walking cane pass, inter alia were done to chill Plaintiff's First Amendment Right to Grieve."  [DE 48 at ¶92]. He alleges no facts tending to show that his filing grievances caused Nurse Jenks to delay treatment or revoke passes. Further, Plaintiff nowhere alleges that he stopped grieving—only that he was afraid to grieve. In fact, he alleges that he "continued to file grievances against Medical for following Wexford Health Sources, Inc. Custom and Policy of saving money at the expense of the patient."  [DE 48 at ¶ 33].   Thus, for the reasons stated, Plaintiff's "First Amendment Violation" claims against Nurse Jenks in Count 7 must be dismissed.

### C.    COUNT 8, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Under Florida law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Hercule v. Wendy's of N.E. Florida, Inc., No. 10-CIV-80248-MARRA, 2010 WL 1882181, *2-3 (S.D. Fla. May 11, 2010) quoting E. Airlines, Inc. v. King, 557 So. 2d 574, 575-76 (Fla. 1990) (quoting Restatement (Second) of Torts § 46 (1965)). The tort of intentional infliction of emotional distress is comprised of the following elements: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should

have known that emotional distress would likely result; (2) The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) The conduct caused emotional distress; and (4) The emotional distress was severe Stewart v. Walker, 5 So.3d 746, 749 (Fla. Dist. Ct. App. 2009) (quoting LeGrande v. Emmanuel, 889 So.2d 991, 994 (Fla. Dist. Ct. App. 2004)). For a defendant's conduct to qualify as "extreme and outrageous," it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App. 1987) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Courts decide the outrageousness of a defendant's conduct as a matter of law. See, e.g., Vamper v. United Parcel Service, Inc., 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998); Johnson v. Thigpen, 788 So.2d 410, 413 (Fla. Dist. Ct. App. 2001); Gandy v. Trans World Computer Tech. Group, 787 So. 2d 116, 119 (Fla. Dist. Ct. App. 2001); Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 1985). Courts also regularly find that racial discrimination allegations, whether delivered by verbal insults or intimidating acts, are not egregious enough to be "outrageous." See Vance v. Southern Bell Tel. &

Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (affirming dismissal of intentional infliction claim where the defendant allegedly hung rope noose over the plaintiff's desk, sabotaged her work, and otherwise racially discriminated against her); Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1296-97 (M.D. Fla. 2006) (repeated racial slurs and other alleged discriminatory treatment did not constitute outrageous conduct).

Plaintiff alleges that Defendants deliberately inflicted mental suffering on him by "denying adequate medical supplies. . .and. . . revoking his cane pass. [DE 48 at ¶96]. This does not rise to the level of outrageous conduct necessary to support a claim for infliction of emotional distress. Accordingly, Count 8 must be dismissed.

### D. COUNTS 9 AND 10 PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR "CONCERT OF ACTION" AND "AIDING AND ABETTING" RESPECTIVELY.

As to Count 9 "Concert of Action" the purported cause of action appears to be grounded upon other individual Defendants acting in concert with Nurse Jenks to "deprive Plaintiff of adequate medical supplies" and "retaliat[ing] by either ignoring valid medical passes of Plaintiff or [taking] away a cane. . . ." See [DE 48 at ¶103]. "*The implication is that a specific wrongdoer can be identified.* Those that aid, encourage or otherwise further the tortious conduct by express or tacit agreement are jointly and severally liable with the wrongdoer for causing the

plaintiff's injury. However, proof of causation is still required." <u>Ray v. Cutter Laboratories, Division of Miles, Inc.</u>, 744 F. Supp. 1124, 1127 (M.D. Fla. 1990) (internal citation omitted) (emphasis added).

Dean Prosser has stated the doctrine as follows: "All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him." W. Prosser, The Law of Torts § 98 at 292 (1971).

Albeit confusing, and a cause of action not normally seen in this context, it appears from the allegations in Count 9 that Nurse Jenks is the wrongdoer with whom everyone else was in concert of action. Thus, logically, if the concert of action cause of action creates liability for those that act in furtherance of the wrongdoer, the wrongdoer can not also be liable under that particular cause of action.   Additionally, the alleged wrongdoings of Nurse Jenks found in Count 9 are the same as have been alleged in Counts 1, 5, and 8. For the reasons argued above in support of dismissing Counts 1, 5, and 8 any "Concert of Action" must also be dismissed.

As to Count 10, "Aiding and Abetting" the allegations are similar in substance (but slightly more confusing) as Count 9—that <u>others</u> "knew of said tortuous [sic] acts of Defendant Jenks and either joined or condoned her actions by

delegating non-delegable duties to her that amounted to doing dirty works for her principals." [DE 48 at ¶ 107]. Nurse Jenks re-argues her reasons for dismissing Count 9. To the extent that Nurse Jenks can comprehend Count 10, she moves to dismiss it for failing to state a cause of action. If this Court is not inclined to grant her Motion to Dismiss Count 10, the allegations therein are so vague and ambiguous to Nurse Jenks that she cannot prepare a response and would accordingly move for a more definite statement under Fed.R.Civ.P. 12(e).

### E.  COUNT 11, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff also fails to state a claim for negligent infliction of emotional distress. In Florida, claims for negligent infliction of emotional distress are governed by the "impact rule" designed to assure the validity of claims for emotional distress. Int'l Ocean Tel. Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893). The impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Southern Baptist Hosp. of Fla. v. Welker, 908 So.2d 317 (Fla. 2005). The judicially created rule attempts to safeguard the court from fictitious and speculative claims arising from purely emotional distress. Id. Though courts recognize exceptions to the impact rule, these exceptions arise in extraordinary circumstances where "the foreseeability and gravity of the emotional injury

involved, and the lack of countervailing policy concerns, have surmounted the policy rational undergoing application of the impact rule." <u>Rowell v. Holt</u>, 850 So.2d 474, 478 (Fla. 2003).

Here, Plaintiff has failed to allege any physical impact whatsoever. Accordingly, Plaintiff has not stated a cause of action for Negligent Infliction of Emotional Distress and Count 11 must be dismissed.

**F.   COUNTS 13, PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR GENERAL NEGLIGENCE.**

As to Count 13 General Negligence, claims for medical negligence or medical malpractice are subject to the presuit screening requirements of Florida Statutes chapter 766. <u>See</u> Fla. Stat. 766.106(2)(a); <u>Corbo v. Garcia</u>, 949 So.2d 366, 368 (Fla. 2d DCA 2007). Florida Statute § 766.106(1)(a) defines a claim for "medical negligence" or "medical malpractice" as "a claim arising out of the rendering of, or the failure to render, medical care or services." <u>J.B. v. Sacred Heart Hosp.</u>, 635 So.2d 945, 948-49 (Fla.1994). In order to qualify as a medical malpractice claim, the wrongful act alleged "must be directly related to the improper application of medical services and the use of professional judgment or skill." <u>Quintanilla v. Coral Gables Hosp., Inc.</u>, 941 So.2d 468, 469 (Fla. 3d DCA 2006) (citing <u>Lynn v. Mount Sinai Med. Ctr., Inc.</u>, 692 So.2d 1002, 1003 (Fla. 3d DCA 1997)). Furthermore, the alleged injury "must be a direct result of receiving medical care or treatment by the healthcare provider." <u>Id.</u> (citing <u>Goldman v.</u>

Halifax Med. Ctr., Inc., 662 So.2d 367, 371 (Fla. 5th DCA 1995)). A plaintiff must follow the presuit screening requirements of Florida Statutes chapter 766 in order to rely on the medical negligence standard of care in proving his or her case. Fassy v. Crowley, 884 So.2d 359, 364 (Fla. 2d DCA 2004).

The decision to provide medical care and medication to a patient requires the exercise of medical judgment and skill. As such, a claim for negligence in failing to provide medical care and medication requires applying the standard of care for medical negligence. See Bailey v. Prison Health Services, Inc., No. 6:07-cv-1205, 2007 U.S. Dist. LEXIS 83456, *2-6, 2007 WL 3348268 (M.D. Fla. Nov. 9, 2007) (Plaintiff's claim against defendant prison health care provider for failing to provide her with prescribed medications while incarcerated was subject to the medical negligence presuit requirements because it directly related to medical and mental diagnosis, treatment, and care by a healthcare provider and required the application of the prevailing professional standard of care for a healthcare provider).

The allegations of Count 13 fit within the definition of "medical negligence" set forth in Florida Statutes Section 766.106(1)(a) and Plaintiff is required to follow the presuit requirements of chapter 766. These requirements must be met before maintaining a suit for medical negligence. Univ. of Miami v. Wilson, 948 So.2d 774, 776 (Fla. 3d DCA 2006). Because Plaintiff attempts to cast Count 12

and 13 of his Amended Complaint as a claims for negligent supervision and simple negligence, Plaintiff does not allege he complied with the presuit requirements of chapter 766 for filing a medical negligence claim. Therefore, Counts 10 and 11 must be dismissed. <u>See</u> <u>Hosp. Corp. of Am. v. Lindberg</u>, 571 So.2d 446, 449 (Fla.1990) (in order to assert a medical negligence claim, a plaintiff must allege that he complied with Florida's presuit requirements).

Further, the two year statute of limitations on medical negligence has passed. <u>See</u>, <u>e.g.</u>, <u>Johnson v. McNeil</u>, 278 F. App'x 866, 872 & n.3 (11th Cir. 2008) (affirming dismissal with prejudice for failure to comply with Chapter 766 where the statute of limitations had already expired); <u>R.W. v. Armor Correctional Health Servs., Inc.</u>, 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) ("Since the applicable two-year statute of limitations for medical malpractice claims has expired. Plaintiff has lost her right to cure her failure to file the pre-suit requirements."). Accordingly, Count 13 of the Complaint must be dismissed.

## III.   CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Complaint should be dismissed.

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on **September 12, 2019**, and via US

Mail to: Plaintiff, **Sadik Baxter,** DC# M8116, Tomoka CI, 3950 Tiger Bay Road, Daytona

Beach, FL 32124-1098

CHIMPOULIS & HUNTER, P.A.
Attorneys for Def / Wexford Health Sources, Inc.
150 South Pine Island Road - Suite 510
Plantation, FL  33324
Phone: (954) 463-0033 / FAX:  (954) 463-9562

/s/ Alexander Dombrowsky                        
BY:   ALEXANDER DOMBROWSKY, ESQ.
      Florida Bar No.:  186260
      Email – adombrowsky@chimpoulishunter.com
      M. KATHERINE HUNTER, ESQUIRE
      Florida Bar No.:  981877
      Email – khunter@chimpoulishunter.com