# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

SADIK BAXTER,

        Plaintiff,

v.                            Case No: 2:18-cv-479-JLB-NPM

WEXFORD HEALTH SOURCES, INC., DR.
HEMPHILL, DOCTOR BLANKENSHIP, C.
BERRIOS and FNU JENKS,

        Defendants.

_____/

## ORDER

Plaintiff Sadik Baxter, proceeding *pro se*, is a convicted inmate at Charlotte Correctional Institution.  He sues Defendants Wexford Health Sources, Inc. ("Wexford"), Denise Jenks[1], Dr. Hemphill, Dr. Blankenship, and Dr. Berrios, for civil rights and tort claims arising out of medical treatment he received from the medical staff employed by Wexford at Charlotte Correctional Institution.  Before the Court are motions to dismiss by Wexford (Doc. 49); Nurse Jenks (Doc. 50); and Dr. Hemphill, Dr. Blankenship, and Dr. Berrios (Doc. 61).  The motions are **GRANTED in part** and **DENIED in part**, as described below.

### BACKGROUND

Mr. Baxter claims he was diagnosed with a urogenital disorder and a disorder that causes fecal retention.  These were caused from injuries sustained from a gunshot wound to his spinal cord.  (Doc. 48 at ¶¶ 10–11.)  These ailments

_____

[1] Jenks is named in the complaint as "RN Jenks."

require him to self-catheterize.  (Id. at ¶ 11.)  He also claims to suffer from interstitial cystitis and an allergy to latex catheters, which necessitates a specific treatment regimen.  (Id. at ¶¶ 11–12.)  Mr. Baxter's previous correctional institution provided him medical passes for these treatments. They included six non-latex catheters per day, lubricant, non-latex gloves, toilettes, and a biohazard bag.  (Id. at ¶¶ 14, 17.)  But after his transfer to Charlotte Correctional Institution, the Charlotte medical staff allegedly decided that Mr. Baxter's medical passes would not be honored.  (Id. at ¶¶ 19, 21.)

According to the complaint, Dr. Hemphill assessed Mr. Baxter and conferred with Nurse Jenks, determining that Mr. Baxter be provided with three catheters per week.  (Id. at ¶¶ 16, 19, 21.)  At this time, Nurse Jenks allegedly stated that Charlotte Correctional Institution had a budget and could not "afford" to provide Mr. Baxter with the requested medical supplies.  (Id. at ¶ 21.)  Nurse Jenks's comments were allegedly consistent with Wexford's budgetary policy.  (Id.)  Despite Mr. Baxter's protests, Nurse Jenks then gave Mr. Baxter his weekly ration of three disposable single-use catheters, three lubricants, and three pairs of gloves, instructing Mr. Baxter to make these resources last a week.  (Id. at ¶ 24.)  Dr. Hemphill and Nurse Jenks allegedly told Mr. Baxter that it was appropriate to wash and reuse the disposable catheters.  (Id. at ¶ 25.)

According to the complaint, Mr. Baxter later saw Dr. Blankenship and Nurse Jenks for treatment of a cyst.  (Id. at ¶¶ 28–29.)  At that time, Mr. Baxter allegedly

discussed some other issues he was having because of his repeated use of unsterilized catheters, including pain and bloody urine.  (Id. at ¶ 30.)

In the complaint, Mr. Baxter alleges that the limited medical supplies he received were based on a cost-savings policy employed by Wexford at Charlotte Correctional Institution.  (Id. at 34–36.)  Indeed, although it is unclear from the complaint when Mr. Baxter began filing grievances about this policy, he alleges that he "continued to file grievances against Medical for following Wexford's Custom and Policy of saving money at the expense of the patient."  (Id. at ¶ 33.)

After filing these grievances, Mr. Baxter alleges, Dr. Berrios told Mr. Baxter that the medical staff was tired of his grievances.  (Id. at ¶ 43.)  Mr. Baxter continued to receive less than the necessary number of catheters, and Dr. Berrios allegedly withheld his walking cane.  (Id. at ¶ 44.)  Mr. Baxter claims this was in retaliation for his grievances.  (Id.)  Ultimately, Mr. Baxter contracted a severe urinary tract infection ("UTI"), which he blames on Defendants' medical care, including their refusal to provide him more than three "single-use" catheters, seven gloves, and three lubricants a week, and requiring that he wash and reuse single-use, disposable catheters.  (Id. at ¶¶ 44, 47.)

Mr. Baxter asserts 13 claims, including claims for (a) deliberate indifference in violation of his Eighth Amendment rights (Counts I, II, III, IV, V); (b) violation of his Fourteenth Amendment rights (Count VI); (c) retaliation in violation of his First Amendment rights (Count VII); (d) intentional infliction of emotional distress, or "IIED" (Count VIII); (e) "concert of action" (Count IX); (f) aiding and abetting (Count

X); (g) negligent infliction of emotional distress ("NIED") (Count XI); (h) negligent supervision (Count XII); and (i) negligence (Count XIII).  As relief, Mr. Baxter seeks $200,000 in compensatory damages, $700,000 in punitive damages, other nominal damages, a jury trial, and costs.

Defendants filed motions to dismiss, each arguing Mr. Baxter has failed to state a claim against them.  (Docs. 49, 50, 61.)  Mr. Baxter filed two responses. (Docs. 64, 68.)  The Court will address each motion to dismiss in turn below.

DISCUSSION

## I.   Legal Standard

In deciding a Rule 12(b)(6) motion, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  The Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006)).  But no presumption of truth attaches to conclusory allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553–54 (2007)).

Generally, a *pro se* plaintiff is given at least one chance to amend his complaint before dismissal with prejudice if a more carefully drafted complaint might state a claim.  See Irons v. Carroll, No. 2:17-cv-561-FtM-29UAM, 2019 WL 630332, at *3 (M.D. Fla. Feb. 14, 2019) (citation omitted).

## II.     Wexford's Motion to Dismiss

Mr. Baxter sues Wexford for discrimination under the Americans with Disabilities Act ("ADA") (Count VI), First Amendment retaliation (Count VII), IIED (Count VIII), "concert of action" (Count IX), aiding and abetting (Count X), NIED (Count XI), negligent supervision (Count XII), and negligence (Count XIII). (Doc. 48.)  Wexford moves under Federal Rule of Civil Procedure 12(b)(6) for dismissal of those counts for Mr. Baxter's failure to state a claim against him.  (Doc. 49.)

### A.     Count VI (ADA Discrimination)

In Count VI, Mr. Baxter asserts a discrimination claim for violating Title II of the ADA.  42 U.S.C. §§ 12131–12165.[2]  To establish a prima facie case under the ADA, Mr. Baxter must show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability."  <u>Lonergan v. Fla. Dep't of</u>

---

[2] Count VI also includes allegations that Wexford was deliberately indifferent to Mr. Baxter's serious medical needs, potentially to set up a separate deliberate indifference claim.  (Doc. 48 at ¶¶ 84–85.)  Despite these conflated allegations, Mr. Baxter does not assert a discrete deliberate indifference claim in Count VI.  Wexford has apparently moved to dismiss a deliberate indifference claim in an abundance of caution.  After careful review, the Court does not interpret the complaint as intending to assert a cause of action for deliberate indifference against Wexford (in Count VI or elsewhere).  Therefore, there is nothing to dismiss.  The Court's analysis here is therefore limited to the ADA discrimination claim, in accordance with Mr. Baxter's labeling of Count VI.

Corrections, 623 F. App'x 990, 992 (11th Cir. 2015) (citing Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)).  A plaintiff may bring an ADA claim based on a theory that a defendant did not reasonably accommodate the plaintiff's disability.  Id. at 992, 994 (citing Schwarz v. City of Treasure Isl., 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (finding the failure of a correctional institution to provide the plaintiff treatment prescribed by his dermatologist was sufficient to plead a prima facie ADA discrimination claim))).

Wexford argues that medical treatment decisions cannot serve as the basis for claims under the ADA.  (Doc. 49 at 13.)  While mere disagreement with medical treatment decisions may not support claims under the ADA, the failure of prison medical personnel to provide a prisoner with prescribed accommodations in favor of an alternative remedy that does not provide sufficient treatment may be enough for a plaintiff to plead a prima facie case.  See Lonergan, 623 F. App'x at 994 (reversing dismissal of complaint where plaintiff pleaded that a prison's medical personnel provided an insufficient alternative remedy to that prescribed by his dermatologist).

According to the complaint, a urologist prescribed Mr. Baxter a specific regimen of self-catheterization.  (Doc. 48 at ¶ 12.)  Mr. Baxter alleges that Wexford personnel did not honor his previously received medical passes based on a urologist's prescription and only provided him with half his weekly supply of catheters based on the institution's alleged cost-savings policy.  (Id. at ¶¶ 37–38.)  Thus, Mr. Baxter successfully alleges more than mere disagreement with his medical treatment—he alleges a failure to provide treatment ordered by a urologist.

There is no allegation of a new diagnosis that would cause Mr. Baxter's recommended treatment regimen to change.  Thus, Mr. Baxter has met his burden of pleading Count VI.

### B.    Count VII (First Amendment Retaliation)

Count VII is not clearly directed at any Defendant.  Mr. Baxter's allegation that "Defendant's acting in a concerted effort . . ." appears to be a scrivener's error when collectively referencing Defendants.  (Doc. 48 at ¶ 96.)  Wexford moves to dismiss this Count for failure to state a claim as if properly named, and this Court liberally construes the complaint as attempting to assert a First Amendment retaliation claim against all Defendants, including Wexford.

> To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show: (1) [he] engaged in constitutionally protected speech, such as h[is] right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition.

DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1289 (11th Cir. 2019) (citation omitted).  "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment."  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 200) (internal quotation and citation omitted).

Wexford argues that Mr. Baxter has failed to state a claim against it because he has not pleaded that his treatment issues were caused by Wexford's customs or policies.  (Doc. 49 at 14–15.)  According to the complaint, Mr. Baxter filed grievances

relating to Wexford's <u>alleged policy of saving money</u> to the detriment of medical patients.  (Doc. 48 at ¶ 33.)  Mr. Baxter further alleges that Dr. Berrios told him that the medical staff was tired of the grievances.  (<u>Id.</u> at ¶ 43.)  Finally, Mr. Baxter alleges Wexford's medical staff deprived him of access to a necessary walking cane and did not follow up regarding his urologist-recommended treatment plan.  (<u>Id.</u> at ¶ 44.)  These actions—which Mr. Baxter claims resulted from the application of Wexford's cost-savings policy—allegedly caused Mr. Baxter injury, including a UTI.  (<u>Id.</u> at ¶ 47.)  Accordingly, the complaint adequately pleads the elements of a First Amendment retaliation claim and a respondeat superior theory against Wexford.  The Court denies Wexford's motion as to Count VII.

### C.    Count VIII (Intentional Infliction of Emotional Distress)

To state a cause of action for IIED in Florida, a plaintiff must show four elements: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe."  <u>Lincoln v. Fla. Gas Transmission Co. LLC</u>, 608 F. App'x 721, 722 (11th Cir. 2015) (citing <u>Thomas v. Hosp. Bd. of Dirs. Of Lee Cnty.</u>, 41 So. 3d 246, 256 (Fla. 2d DCA 2010)).

Wexford argues that the conduct alleged does not rise to the "outrageous" level required to support a claim for IIED.  For conduct to be sufficiently outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Lopez v. Target Corp.</u>, 676 F. 3d 1230, 1236 (11th Cir. 2012) (quoting

Restatement (Second) of Torts § 46 (Am. Law Inst. 1965)).[3]  Florida courts have been reluctant to find claims for IIED, imposing a high standard to meet the "outrageousness" requirement.  See id. at 1236–37 (citing examples of various Florida courts rejecting IIED claims based on the outrageousness requirement).

Taking the complaint's allegations as true, the alleged conduct may have been inappropriate but does not appear to be outrageous.  The medical staff provided Mr. Baxter with medical supplies, albeit potentially inadequate ones.  Moreover, Mr. Baxter does not provide sufficient detail regarding the alleged withholding of his walking cane to establish that conduct as outrageous.  Thus, Count VIII will be dismissed without prejudice as to Wexford, with leave to amend.  Any amendment must make clear how Wexford's alleged conduct is sufficiently outrageous to support an IIED claim.  If it does not, the claim will be dismissed with prejudice.

### D.   Counts IX and X (Concert of Action and Aiding and Abetting)

Counts IX and X are vaguely pleaded and confusing.  Mr. Baxter does not clearly allege what role each Defendant played in the underlying wrongful conduct or how they all allegedly worked together.  Wexford argues that Count IX and X for concert of action and aiding and abetting, respectively, should be dismissed for the same reasons as Count VIII for IIED.

---

[3] The Florida Supreme Court has adopted the Restatement (Second) of Torts' standard for IIED.  Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1985)

Concert of action is explained as: "All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit." Ray v. Cutter Labs., Div. of Miles, Inc., 744 F. Supp. 1124, 1127 (M.D. Fla. 1990) (quoting W. Prosser, The Law of Torts, § 98 (1971)) (noting that a specific tortfeasor must be identified to find others liable of concert of action).  "Those that aid, encourage or otherwise further the tortious conduct by express or tacit agreement are jointly and severally liable with the wrongdoer for causing the plaintiff's injury." Id. (citing Morton v. Abbott Labs., 538 F. Supp. 593, 595 (M.D. Fla. 1982)).  Mr. Baxter has sufficiently pleaded underlying torts for his concert-of-action claim.  He properly identifies the tortfeasors by alleging Nurse Jenks acted in concert with Dr. Hemphill, Dr. Blankenship, and Dr. Berrios to implement Wexford's cost-savings policy in a manner that caused harm to Mr. Baxter.  (Doc. 48 at ¶ 102.)

Aiding and abetting is a very similar cause of action to concert of action.  "In Florida, a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906–07 (11th Cir. 2012) (first citing Amerifirst Bank v. Bomar, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991), then citing ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md., 917 So. 2d 368, 372 (Fla. 5th DCA 2005)).

Like concert of action, aiding and abetting necessarily relies on the existence of an underlying tort.  And because Mr. Baxter sufficiently pleaded the underlying torts and satisfies the remaining "assistance" elements of both concert of action and aiding and abetting, Wexford's motion is denied as to Counts IX and X.

### E.    Count XI (Negligent Infliction of Emotional Distress)

Wexford argues that Mr. Baxter's NIED claim is barred by Florida's impact rule.  In general, Florida law bars recovery for emotional distress injuries caused by a defendant's negligence in the absence of physical impact to the claimant.  Bodine v. Fed. Kemper Life Assur. Co., 912 F.2d 1373, 1376 (11th Cir. 1990) (citing Gilliam v. Stewart, 291 So. 2d 593 (Fla. 1974)).  But there was physical impact: Mr. Baxter used dirty catheters on himself based on his prescription.

Florida courts have recognized that invasive medical treatment or the prescribing of drugs with toxic or adverse side effects that caused bodily injury would meet the requirements of the impact rule.  See, e.g., R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 364 (Fla. 1995) ("We do recognize . . . that a negligent misdiagnosis such as the one at issue could result in unnecessary and harmful medical treatment that does in fact cause bodily injury, which, in turn, would satisfy the requirements of a physical impact.")  Reading the complaint liberally, there are allegations that Mr. Baxter was directed to wash and reuse catheters designed for a single use.  (Doc. 48 at ¶¶ 19, 21, 25, 32–36, 44.)  Mr. Baxter therefore used allegedly non-sterile catheters on himself in accordance with the direction of Defendants.  (Id. at ¶ 44.)  Mr. Baxter sufficiently alleges that the

prescription/direction was consistent with Wexford's cost-savings policy.  (Id. at ¶¶32–36.)  This harmful medical treatment is exactly the sort of treatment that the Florida Supreme Court recognized would satisfy the physical requirement of an NIED claim in Humana.  See 652 So. 2d at 364.  And Mr. Baxter has sufficiently pleaded a causal connection between the alleged conduct and injury.  Accordingly, Wexford's motion is denied as to Count XI.

### G.   Counts XII and XIII (Negligent Supervision and General Negligence)

Wexford argues Count XII for negligent supervision and Count XIII for negligence should be dismissed for failure to comply with statutory pre-suit notice requirements and because the two-year statute of limitations on the claims have passed.  Although the statute of limitations in ordinary negligence claims is four years, the applicable limitations period for medical malpractice is two years.  Compare Fla. Stat. § 95.11(3)(a), with Fla. Stat. § 95.11(4)(b).  Wexford argues Mr. Baxter's negligent supervision and general negligence claims are substantively medical in nature, and therefore should be treated as medical malpractice claims.  (Doc. 49 at 18–21.)

A claim for "medical malpractice" is "a claim arising out of the rendering of, or the failure to render, medical care of services."  Fla. Stat. § 766.106(1)(a).  Courts have found similar claims regarding the provision of medical care or supplies should be construed as medical malpractice claims regardless of a plaintiff's classification of the claim.  See, e.g., Bailey v. Prison Health Servs., Inc., No. 6:07-cv-1205-Orl-28DAB, 2007 WL 3348268, at *2 (M.D. Fla. Nov. 9, 2007) (dismissing a negligent

supervision case stemming from the alleged failure of prison medical staff to provide a prisoner with prescribed medication for failure to comply with Florida's requirements of medical negligence claim).  Here, because the negligence claim and the negligent supervision claim will require the Court to look at the professional standard of care owed by a medical professional in addressing Mr. Baxter's ailments, the Court construes these claims as medical malpractice claims subject to a two-year statute of limitations.  The alleged wrongful conduct occurred more than two years before Mr. Baxter filed his complaint.  But there is a "delayed discovery" exception to this statute of limitations, allowing for filing "2 years from the time the incident is discovered, <u>or should have been discovered with the exercise of due diligence</u>."  Fla. Stat. 95.11(7)(b) (emphasis added).  With that in mind, it is unclear at this early stage as to whether Mr. Baxter should have discovered the alleged injury with exercise of due care.  Discovery is needed to develop the facts necessary for the Court to conduct the necessary, fact-intensive analysis to discern whether the statute of limitations ran under section 95.11(7)(b).  Accordingly, Wexford's motion to dismiss Counts XII and XIII are denied.  That said, because the Court has construed Mr. Baxter's claim as one grounded in medical malpractice, Wexford's motion to dismiss Counts XII and XIII are denied without prejudice.

### III.    Nurse Jenks's Motion to Dismiss

Mr. Baxter sues Nurse Jenks for deliberate indifference in violation of the Eighth Amendment (Counts I and V), retaliation in violation of the First Amendment (Count VII), IIED (Count VIII), concert of action (Count IX), NIED

(Count XI), and negligence (Count XIII).  Nurse Jenks argues that Mr. Baxter fails
to state a claim under Rule 12(b)(6).  (Doc. 50.)

### A.    Counts I and V (Deliberate Indifference)

Counts I and V purport to assert deliberate indifference claims against Nurse
Jenks.  "To prevail on a deliberate indifference to serious medical need claim, [a
plaintiff] must show:  (1) a serious medical need; (2) the defendant['s] deliberate
indifference to that need; and (3) causation between that indifference and the
plaintiff's injury."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir.
2009) (citing Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007)).  "A serious
medical need is one that has been diagnosed by a physician as mandating treatment
or one that is so obvious that even a lay person would easily recognize the necessity
for a doctor's attention."  Id. at 1307 (citation omitted).

Nurse Jenks argues that Mr. Baxter merely wanted more catheters than the
medical staff gave him.  (Doc. 50 at 8.)  She argues that the medical staff saw him
numerous times and provided treatment, contending that his desire for more
catheters does not rise to a constitutional violation.  (Id. at 7–8.)  Mr. Baxter pleads
a serious medical claim—a diagnosis and prescribed medical treatment from a
urologist.  He further alleges his various encounters with the Charlotte Correctional
Institute medical staff, including Nurse Jenks.  Finally, he alleges causation
between the alleged indifference to his medical needs—as established by his prior
diagnosis and the urologist's recommendation—and his resulting UTI.  Mr. Baxter

therefore sufficiently pleads each element of a deliberate indifference claim against Jenks.

### B.    Count VII (First Amendment Retaliation)

Although Count VII does not specifically name Nurse Jenks, the Court liberally construes the complaint as asserting a claim against Jenks in Count VII. Jenks's argument for dismissal of the First Amendment retaliation claim is similar to Wexford's.  But the allegations against her are somewhat more direct.  Mr. Baxter alleges she commented "great not f***ing you again" when he returned for care with a cyst on his backside.  (Doc. 48 at ¶ 31.)  He alleges that she went on to ignore Dr. Blankenship's request to provide him with the proper amount of medical supplies.  (Id.)  But absent from the complaint is any allegation establishing a causal connection between the grievances filed by Mr. Baxter and any allegedly retaliatory action by Nurse Jenks.  Because there is insufficient information in the complaint for the Court to infer a causal connection between Nurse Jenks's allegedly adverse actions and the retaliation, Count VII is dismissed as to Nurse Jenks with leave to amend.

### C.    Count VIII (IIED)

For the reasons stated above as to Wexford, Count VIII is dismissed as to Jenks with leave to amend.

### D.    Counts IX and X (Concert of Action and Aiding and Abetting)

For the reasons stated above as to Wexford, Counts IX and X sufficiently pleads a concert of action and aiding and abetting as to underlying torts.  Nurse

Jenks acted together with Dr. Hemphill, Dr. Blankenship, and Dr. Berrios in applying Wexford's cost-savings policy to the detriment of Mr. Baxter.  Mr. Baxter successfully pleads the elements of each claim.  Nurse Jenks's motion to dismiss is therefore denied as to Counts IX and X.

### E.   Count XI (NIED)

As discussed above, Mr. Baxter has sufficiently alleged that Nurse Jenks and others made him use dirty catheters, which ultimately caused a UTI.  His allegations satisfy Florida's impact rule, and therefore Nurse Jenks's motion is denied as to Count XI.

### F.   Count XIII (General Negligence)

For the reasons stated as to Wexford, Nurse Jenks's motion to dismiss as to Count XIII is also denied without prejudice.

**Dr. Hemphill, Dr. Blankenship, and Dr. Berrios's Motion to Dismiss.**

Mr. Baxter sues Dr. Hemphill, Dr. Blankenship, and Dr. Berrios for deliberate indifference in violation of the Eighth Amendment (Counts I and IV), retaliation in violation of the First Amendment (Count VII), intentional infliction of emotional distress (Count VIII), concert of action (Count IX), aiding and abetting (Count X), negligent infliction of emotional distress (Count XI), negligent supervision (Count XII), and general negligent (Count XIII).  They argue Mr. Baxter failed to state a cause of action.  (Doc. 61.)

### A.     Counts I, II, III, and IV (Deliberate Indifference)

As discussed in connection with Count I and V as to Jenks, Mr. Baxter properly pleads a cause of action for deliberate indifference against each of Dr. Hemphill, Dr. Blankenship, and Dr. Berrios.  They raise the same arguments as Nurse Jenks with the same result.  Each of these individuals is alleged to have been deliberately indifferent to a serious medical need of Mr. Baxter and their motion is denied as to Counts I, II, III, and IV.

### B.     Count VII (First Amendment Retaliation)

Dr. Hemphill, Dr. Blankenship, and Dr. Berrios assert similar arguments as Wexford with respect to Count VII for First Amendment retaliation.  Mr. Baxter alleges that Dr. Berrios statement that "medical is tired of you filing grievances over this matter" and then retaliated against Mr. Baxter by depriving him of access to his walking cane and not following up on ordered medical treatment.  (Doc. 48 at ¶¶ 43–44.)  Mr. Baxter has therefore sufficiently pleaded a connection between Dr. Berrios's (allegedly retaliatory) actions against him and Mr. Baxter's filing of grievances.  The Court thus denies the motion as to Count VII against Berrios.

But there are no allegations that Dr. Hemphill or Dr. Blankenship for the Court to infer that they took any retaliatory actions against Mr. Baxter based on their knowledge of grievances, or even that they had knowledge of the grievances.  In other words, there are no other allegations for the Court to infer a causal connection between the grievances and the retaliatory conduct alleged.  Thus, Count VII is dismissed with leave to amend as to Dr. Hemphill and Dr.

Blankenship.  If Mr. Baxter amends Count VII, he must make clear which parties are being sued, how the filing of his grievances has some causal connection with the actionable conduct of those parties, and the retaliatory actions they took as a result. Failure to make those allegations should Mr. Baxter choose to amend, the Count will be dismissed without further leave to amend.

### C.     Count VIII (IIED)

Dr. Hemphill, Dr. Blankenship, and Dr. Berrios assert similar arguments as Wexford with respect to Count VIII for intentional infliction of emotional distress. The reasons stated above apply equally here and the Court grants the motion as to Count VIII.  This Count is dismissed with leave to amend.

### D.     Counts IX and X (Concert of Action and Aiding and Abetting)

For the reasons stated above, Counts IX and X are dismissed with leave to amend as to Dr. Hemphill, Dr. Blankenship, and Dr. Berrios.

### E.     Count XI (NIED)

For the reasons stated above, Mr. Baxter has pleaded a cause of action for NIED.  Dr. Hemphill, Dr. Berrios, and Dr. Blankenship's motion is denied as to Count XI.

### F.     Counts XII and XIII (Negligent Supervision and Negligence)

Dr. Hemphill, Dr. Blankenship, and Dr. Berrios did not move to dismiss to Count XII.  Presumably, this was due to the confusing way Mr. Baxter pleaded his count for negligent supervision.  Mr. Baxter referred to "Defendant" (singular) without specifying which Defendant, but also alleges "Defendants should have

overruled Defendant Jenks and stopped her from continually delaying and denying orders of treatment.' (Doc. 48 at ¶¶ 116–20.)  It does not matter.  For the reasons stated above, the Court denies their motion to dismiss Count XII and XIII without prejudice.

### CONCLUSION

For the reasons above, it is **ORDERED** that Defendants' motions to dismiss (Docs. 49, 50, 61) are **GRANTED in part** and **DENIED in part**, as follows:

1.  Defendants' motions to dismiss are **DENIED** as to Counts I–VI and IX–XIII.

2.  Defendants' motions to dismiss are **GRANTED IN PART** as to Count VII against Nurse Jenks, Dr. Hemphill, and Dr. Blankenship only. The motions are **otherwise DENIED**.  Count VII is **DISMISSED without prejudice** as to Nurse Jenks, Dr. Hemphill, and Dr. Blankenship only.  Mr. Baxter has leave to amend to assert a claim for First Amendment retaliation against Nurse Jenks, Dr. Hemphill, and Dr. Blankenship in a timely-filed third amended complaint.

3.  Defendants' motions are **GRANTED** as to Count VIII.  Count VIII is **DISMISSED without prejudice** and with leave to amend as to all Defendants.

4.  Defendants must file an answer to the remaining counts of the second amended complaint (Doc. 48) on or before April 21, 2021.

5.      If he so chooses, Mr. Baxter may file a third amended complaint in accordance with the leave to amend granted by this Court above on or before April 21, 2021,

6.      **ORDERED** in Fort Myers, Florida on March 31, 2021.


_____

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE