UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SADIK BAXTER,

        Plaintiff,

v.                                                 Case No. 2:18-cv-479-JLB-NPM

WEXFORD HEALTH SOURCES,
INC., DR. HEMPHILL,
DR. BLANKENSHIP,
C. BERRIOS, and
FNU JENKS,

        Defendants.

---

## ORDER

      Sadik Baxter ("Plaintiff"), a prisoner of the Florida Department of Corrections, initiated this action by filing a pro se complaint against Wexford Health Sources, Inc. and several individual healthcare providers (collectively, "Wexford Defendants") alleging that they were negligent and deliberately indifferent for failing to provide him a sufficient number of urinary catheters while he was confined at Charlotte Correctional Institution, leading to pain and a urinary tract infection. (Doc. 1.) Currently pending before the Court is the Wexford Defendants' motion for partial summary judgment. (Doc. 80.) Plaintiff filed a response in opposition to the motion. (Doc. 83.)

      After carefully reviewing the parties' arguments and supporting evidence, the Court holds that the Wexford Defendants are entitled to summary judgment on Counts Eleven, Twelve, and Thirteen of Plaintiff's second amended complaint

because Plaintiff did not comply with the pre-suit notice and screening requirements of Chapter 766, Florida Statutes.

## I.     Background and Procedural History

Plaintiff initiated this action on July 6, 2018 by mailing a 42 U.S.C. § 1983 civil rights complaint to the Court raising counts of deliberate indifference, retaliation, intentional infliction of emotional distress, concert of action, aiding and abetting, negligent infliction of emotional distress, negligent supervision, and general negligence against Defendants Wexford Health Sources, Inc., Dr. Hemphill, Dr. Blankenship, Dr. Berrios, and Nurse Jenks.  (Doc. 1.)   Plaintiff filed a second amended complaint ("SAC")—the operative pleading before the Court—on August 13, 2019.  (Doc. 48).   In the SAC, Plaintiff raises counts of deliberate indifference, discrimination under the Americans with Disabilities Act, retaliation, intentional infliction of emotional distress, concert of action, aiding and abetting, negligent infliction of emotional distress, negligent supervision, and general negligence against the same defendants.  (Id. at 9–21.)   The defendants filed three separate motions to dismiss the SAC.  (Doc. 49 (Defendant Wexford Health Sources, Inc); Doc. 50 (Defendant Jenks); Doc. 61 (Defendants Hemphill, Blankenship, and Berrios).)

The Court addressed the defendants' three motions in a consolidated order. (Doc. 75.)   The Court summarized the SAC's factual allegations as follows:

> Mr. Baxter claims he was diagnosed with a urogenital disorder and a disorder that causes fecal retention. These were caused from injuries sustained from a gunshot wound to his spinal cord.  These ailments require him to self-catheterize.   He also claims to suffer from interstitial

2

cystitis and an allergy to latex catheters, which necessitates a specific treatment regimen. Mr. Baxter's previous correctional institution provided him medical passes for these treatments. They included six non-latex catheters per day, lubricant, non-latex gloves, toilettes, and a biohazard bag. But after his transfer to Charlotte Correctional Institution, the Charlotte medical staff allegedly decided that Mr. Baxter's medical passes would not be honored.

According to the complaint, Dr. Hemphill assessed Mr. Baxter and conferred with Nurse Jenks, determining that Mr. Baxter be provided with three catheters per week. At this time, Nurse Jenks allegedly stated that Charlotte Correctional Institution had a budget and could not "afford" to provide Mr. Baxter with the requested medical supplies. Nurse Jenks's comments were allegedly consistent with Wexford's budgetary policy. Despite Mr. Baxter's protests, Nurse Jenks then gave Mr. Baxter his weekly ration of three disposable single-use catheters, three lubricants, and three pairs of gloves, instructing Mr. Baxter to make these resources last a week. Dr. Hemphill and Nurse Jenks allegedly told Mr. Baxter that it was appropriate to wash and reuse the disposable catheters.

According to the complaint, Mr. Baxter later saw Dr. Blankenship and Nurse Jenks for treatment of a cyst. At that time, Mr. Baxter allegedly discussed some other issues he was having because of his repeated use of unsterilized catheters, including pain and bloody urine.

In the complaint, Mr. Baxter alleges that the limited medical supplies he received were based on a cost-savings policy employed by Wexford at Charlotte Correctional Institution. Indeed, although it is unclear from the complaint when Mr. Baxter began filing grievances about this policy, he alleges that he "continued to file grievances against Medical for following Wexford's Custom and Policy of saving money at the expense of the patient."

After filing these grievances, Mr. Baxter alleges, Dr. Berrios told Mr. Baxter that the medical staff was tired of his grievances. Mr. Baxter continued to receive less than the necessary number of catheters, and Dr. Berrios

3

> allegedly withheld his walking cane. Mr. Baxter claims this was in retaliation for his grievances. Ultimately, Mr. Baxter contracted a severe urinary tract infection ("UTI"), which he blames on Defendants' medical care, including their refusal to provide him more than three "single-use" catheters, seven gloves, and three lubricants a week, and requiring that he wash and reuse single-use, disposable catheters.

(Doc. 75 at 1–4 (citations omitted).)

Upon consideration of the SAC and the defendants' motions to dismiss, the Court dismissed the retaliation claims against all defendants except Defendants Wexford and Berrios and dismissed all claims for intentional infliction of emotional distress. (Doc. 75 at 5–19.) The Court denied without prejudice the defendants' motion to dismiss Plaintiff's claims for general negligence and negligent supervision, construing them as medical malpractice claims that were subject to a two-year statute of limitations. (Doc. 75 at 13, 15.) The Court noted that "[d]iscovery is needed to develop the facts necessary for the Court to conduct the necessary, fact-intensive analysis to discern whether the statute of limitations ran under section 95.11(7)(b) [on Plaintiff's negligence based claims]." (Id. at 13.) The Court directed the defendants to answer the SAC's remaining counts. (Id. at 19.)

The Wexford Defendants filed their answers and affirmative defenses on April 14, 2021. (Doc. 76.) The Wexford Defendants raised an affirmative defense that Plaintiff's claims for damages were barred by the Prison Litigation Reform Act's ("PLRA's") exhaustion requirement. (Id. at 2.) They also asserted that Plaintiff's medical malpractice, negligence, and First Amendment claims were barred by the applicable statute of limitations and subject to dismissal for failure to

comply with Florida's pre-suit notice and investigation requirements under Florida Statutes Chapter 766. (Id. at 2–4.) Because success on those affirmative defenses would be dispositive to some or all of Plaintiff's claims, the Court allowed the parties to undertake limited discovery on these issues. (Doc. 77)

Thereafter, Wexford Defendants filed their motion for partial summary judgment, asserting that Plaintiff's general negligence claims are barred by a two-year statute of limitations and subject to dismissal for non-compliance with Florida's pre-suit notification requirement. (Doc. 80 at 6.)[1] Plaintiff opposes the motion for summary judgment on the grounds that: (1) there is a genuine question of fact of whether he complied with the statute of limitations because he was treated for his UTI even after his transfer from Charlotte Correctional Institution (Doc. 83 at 5); (2) a four year statute of limitation should apply to all of his claims; and (3) he should be allowed to cure any defects in the pre-suit notice requirement. (Id. at 4.)

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court explains the summary judgment standard as follows:

---

[1] The defendants concede that Plaintiff's claims are exhausted and that the constitutional (retaliation and deliberate indifference) claims are not time-barred. (Doc. 80 at 3.)

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotation marks omitted).  The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof.  Id. at 322–24.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence.  Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

    **B.    Pre-suit notice and screening under Chapter 766, Florida Statutes**

Florida Statute § 766.106—part of the Comprehensive Medical Malpractice Reform Act of 1985—identifies medical negligence or medical malpractice claims as those "arising out of the rendering of, or the failure to render, medical care or

services." Fla. Stat. § 766.106(1)(a) (2018).  A claimant must comply with certain procedural requirements prior to initiating a lawsuit for medical negligence, including providing the defendant with a notice of his intent to sue and conducting pre-suit screening.  Id. §§ 766.106(2) and 766.203(2).  Specifically, prior to filing a claim for medical negligence, "a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence."  Fla. Stat. § 766.106(2)(a).  These requirements are conditions precedent to maintaining a suit for medical malpractice.  Ingersoll v. Hoffman, 589 So. 2d 223, 224 (Fla. 1991).

The remedy for failing to comply with Chapter 766's notice requirement depends on the timing of the case.  If the two-year statute of limitations for bringing a medical malpractice claim has not yet lapsed, Florida courts may dismiss with leave to amend—that is, with leave to properly comply with the requirements.  See Fla. Stat. § 95.11(4)(b); Groover v. Polk Cnty. Bd. of Cnty. Comm'rs, 460 F. Supp. 3d 1242, 1257 (M.D. Fla. 2020) (citing S. Neurosurgical Assocs., P.A. v. Fine, 591 So. 2d 252, 255 (Fla. 4th DCA 1991)).  But if the limitations period has expired, leave to amend would be futile.  See Johnson v. McNeil, 278 F. App'x 866, 872 (11th Cir. 2008).

### III.   Discussion

#### A.   Counts Eleven, Twelve, and Thirteen are medical negligence claims.

The Court has already determined that Plaintiff's negligent supervision and general negligence claims (Counts Twelve and Thirteen) "will require the Court to

7

look at the professional standard of care owed by a medical professional in addressing Mr. Baxter's ailments[.]" (Doc. 75 at 13.) Therefore, Counts Twelve and Thirteen are "medical malpractice claims subject to a two-year statute of limitations." (Id.); see also Fla. Stat. § 95.11(4)(b) (the statute of limitations for medical malpractice is "2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence").

In addition, Plaintiff raises a claim of negligent infliction of emotional distress against the Wexford Defendants in Count Eleven. (Doc. 48 at 19.) In the count, Plaintiff alleges that the defendants negligently breached their duty of care by refusing to continue his prior treatment and by not providing adequate supplies for catherization. (Id. ¶ 113–14.) He asserts that as a result of the Wexford Defendants' "error and gross negligence, Plaintiff suffered physical pain, anguish, embarrassment, humiliation, infection, and the need for future treatment." (Id. ¶ 115.) Again, Count Eleven is "a claim arising out of the rendering of, or the failure to render, medical care or services" and will require the Court to look at the standard of care owed by a medical professional. Fla. Stat. § 766.106(1)(a). Accordingly, notwithstanding Plaintiff's label, the Court finds that Count Eleven is also a claim of medical malpractice, subject to the notice requirements of section 766.106(2). See Bordenkircher v. American Home Products, No. 5:03-cv-443-Oc-10GRJ, 2004 WL 6066924, at *2 (M.D. Fla. Jan. 26, 2004) (finding that all claims based on medical negligence, including a claim for negligent infliction of emotional

8

distress, "relate to and arise directly from the rendering of medical services, [and that] compliance with Florida's medical malpractice pre-suit requirements is a mandatory condition precedent to filing a civil action"); Paulk v. National Medical Enterprises, Inc., 679 So. 2d 1289, 1290 n.3 (Fla 4th DCA 1996) ("It seems to us that the intent expressed in [the text of chapter 766] is to extend the statute whenever the medical judgment of the provider is being challenged.").[2]

### B. Plaintiff did not comply with Florida's pre-suit notification before filing this action.

The Wexford Defendants argue that Plaintiff neither file suit within the applicable two-year statute of limitations for medical malpractice claims nor complied with the Florida Medical Malpractice Act's pre-suit requirements before filing this action. (Doc. 80 at 6.) They note that Plaintiff was transferred from Charlotte Correctional Institution on June 27, 2016, and as a result, the Wexford Defendants could not have been negligent after that date. (Id. at 7.) However, Plaintiff waited until July 6, 2018, to file suit, and the Wexford Defendants argue that it is time-barred by at least nine or ten days. (Id.)[3] The Wexford Defendants provide a copy of Plaintiff's Health Information Transfer/Arrival

---

[2] The Wexford Defendants do not argue, and this Court has not considered, whether Plaintiff's state-law claims for concert of action and aiding and abetting also effectively state claims of medical negligence or malpractice, subject to the pre-suit notice requirements of Fla. Stat. § 766.106.

[3] There is a one-day discrepancy between the transfer date alleged in the motion for summary judgment and the date on Plaintiff's Health Information Transfer/Arrival summary. (Doc. 80 at 6; Doc. 80-1 at 1.)

Summary that shows Plaintiff was transferred from Charlotte on June 28, 2016. (Doc. 80-1.)

In response, Plaintiff argues that his claims are not time-barred because constitutional actions brought under § 1983 are subject to a four-year statute of limitations in Florida. (Doc. 83 at 4.)[4] Plaintiff also argues that a genuine question of fact remains as to whether the filing date should be extended due to the ongoing pain and treatments he experienced after leaving Charlotte Correctional Institution. (Id. at 5.) Finally, he argues that, because his suit was filed within the statute of limitations period, "he should be allowed to cure [the] deficiency with pre-suit requirement[s]." (Id. at 4.)

The Court need not make a finding of the specific accrual date of Plaintiff's medical negligence claims. This is so because Plaintiff does not assert that he complied with Florida's pre-suit requirements for medical malpractice claims, and that failure alone requires dismissal of Counts Eleven, Twelve, and Thirteen. Even if Plaintiff's original complaint was timely, the pre-suit requirements are conditions precedent to filing a suit for medical malpractice, and Florida law calls for dismissal of claims filed before these prerequisites were met. Fla. Stat. § 766.206(2).

---

[4] Plaintiff is correct that his 42 U.S.C. § 1983 claims are subject to a four-year statute of limitation. See Ellison v. Lester, 275 F. App'x 900, 900–02 (11th Cir. 2018) (recognizing that "the four-year statute of limitations under Fla. Stat. § 95.11(3) applies to § 1983 claims arising in Florida"). However, Plaintiff's negligence claims are state-law claims. Florida law prescribes that medical malpractice actions, such as those raised on Counts Eleven, Twelve, and Thirteen, must be brought within two years from the time the incident was discovered, or should have been discovered with the exercise of due diligence. Fla. Stat. § 95.11(4)(b).

10

Moreover, once the applicable statute of limitations expires, a claimant loses the right to cure the default by complying with the pre-suit requirements.  Kukral v. Mekras, 679 So. 2d 278, 283 (Fla. 1996).  Although the Court does not make a finding on the specific date Plaintiff's medical negligence claims accrued, it is clear that these claims accrued by July 6, 2018, the filing date of Plaintiff's original complaint, because Plaintiff describes his injuries in the complaint.  See Tanner v. Hartog, 618 So. 2d 177, 181–82 (Fla. 1993) ("The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself.")  Accordingly, the statute of limitations has long expired, and Plaintiff cannot cure his defect and amend the complaint.  The negligence claims raised in Counts Eleven, Twelve, and Thirteen must be dismissed without leave to amend.

## IV.  Conclusion

For the reasons above, it is **ORDERED**:

1. The Wexford Defendants' motion for partial summary judgment (Doc. 80) is **GRANTED**.

2. Counts Eleven, Twelve, and Thirteen of the second amended complaint (Doc. 48) are **DISMISSED with prejudice** for failure to comply with Chapter 766, Florida Statutes.

3. Plaintiff's motion for a copy of the Wexford Defendants' answer and affirmative defenses (Doc. 79) is **GRANTED**.  If they have not already

11

done so, the Wexford Defendants' are directed to send Plaintiff a copy of their answer and affirmative defenses (Doc. 76.)

3. A case management and scheduling order directing discovery on Plaintiff's remaining counts will issue by separate order.

**DONE AND ORDERED** in Fort Myers, Florida on June 7, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies furnished to:
Counsel of Record
Unrepresented Parties