UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SADIK BAXTER,

                    Plaintiff,

v.                                      Case No.  2:18-cv-479-JLB-NPM

WEXFORD HEALTH SOURCES,
INC., ROBERT HEMPHILL,
KAREN BLANKENSHIP,
CARMELLO BERRIOS, and
DENISE JENKS,

                    Defendants.

_____/

## ORDER

      This cause is before the Court on consideration of a motion for summary judgment filed by Defendants Wexford Health Sources, Inc., Dr. Robert Hemphill, Nurse Practitioner Karen Blankenship, Dr. Carmello Berrios, and Nurse Denise Jenks.  (Doc. 128.)  After careful consideration of the pleadings and exhibits offered by all parties and the entire record before the Court, the Court grants in part and denies in part the defendants' motion.

## I.      Background and Pleadings

      Plaintiff, a Florida state prisoner, initiated this action on July 6, 2018, by mailing a 42 U.S.C. § 1983 civil rights complaint to the Court raising eight claims against Wexford Health Sources, Inc. (Wexford) and four individual medical providers relating to the medical care he received while incarcerated at Charlotte Correctional Institution (CCI).  (Doc. 1.)  Plaintiff generally alleged that the

defendants, in direct contradiction to orders from his urologist, limited the number of single-use catheters provided to him, ultimately causing discomfort, pain, and urinary tract infections (UTIs).   (Id.)   Plaintiff filed a second amended complaint (SAC)—the operative pleading before the Court—on August 13, 2019.   (Doc. 48.) In the SAC, Plaintiff raised counts of medical deliberate indifference, discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (ADA), retaliation, intentional infliction of emotional distress, concert of action, aiding and abetting, negligent infliction of emotional distress, negligent supervision, and general negligence against the same defendants.   (Id. at 9–21.)   The defendants filed three separate motions to dismiss the SAC.   (Doc. 49; Doc. 50; Doc. 61.)

Upon consideration of the SAC and the defendants' motions, the Court issued a consolidated order dismissing the retaliation claims against all the defendants except Wexford and Dr. Berrios and dismissing all claims for intentional infliction of emotional distress.   (Doc. 75 at 5–19.)   The Court denied without prejudice the defendants' motion to dismiss Plaintiff's claims for general negligence and negligent supervision, construing them as medical malpractice claims subject to a two-year statute of limitations.   (Id. at 13, 15.)   The Court noted that "[d]iscovery is needed to develop the facts necessary for the Court to conduct the necessary, fact-intensive analysis to discern whether the statute of limitations ran under section 95.11(7)(b) [on Plaintiff's negligence-based claims]."   (Id. at 13.)   The Court directed the defendants to answer the SAC's remaining counts.   (Id. at 19.)

The defendants filed their answers and affirmative defenses on April 14, 2021.   (Doc. 76.)   They raised an affirmative defense that Plaintiff's claims for

damages were barred by the Prison Litigation Reform Act's ("PLRA's") exhaustion requirement.   (Id. at 2.)   They also asserted that Plaintiff's medical malpractice, negligence, and First Amendment claims were barred by the applicable statute of limitations and subject to dismissal for failure to comply with Florida's pre-suit notice and investigation requirements under Florida Statutes Chapter 766.   (Id. at 2–4.)   Because success on those affirmative defenses would be dispositive to some or all of Plaintiff's claims, the Court allowed the parties to undertake limited discovery on these issues.   (Doc. 77)

Thereafter, the defendants filed a motion for partial summary judgment, asserting that Plaintiff's general negligence claims were barred by a two-year statute of limitations and subject to dismissal for non-compliance with Florida's pre-suit notification requirement.   (Doc. 80 at 6.)[1]   Based on the pleadings and exhibits, the Court concluded that Plaintiff's claims of negligent infliction of emotional distress, negligent supervision, and general negligence (Counts Eleven, Twelve, and Thirteen) were medical negligence claims, that Plaintiff did not comply with Florida's pre-suit notification requirements for medical negligence claims, and that Plaintiff could not cure the defect because the statute of limitations had already expired   (Doc. 87 at 7–11.)   Thus, these claims were dismissed without leave to amend.   (Id. at 11–12.)

---

[1] The defendants conceded that Plaintiff's claims were exhausted and that the constitutional (retaliation and deliberate indifference) claims were not time-barred.   (Doc. 80 at 3.)

On June 7, 2022, the Court entered a case management and scheduling order (CMSO) setting deadlines for discovery.   (Doc. 89.)   The Court stayed the case pending the completion of discovery and the filing of dispositive motions.   (Doc. 95.) The defendants filed this motion for summary judgment on May 8, 2023.   (Doc. 128.)   Plaintiff has filed a response (Doc. 151), and the defendants have filed a reply.   (Doc. 152.)   The parties have supported their pleadings with exhibits. (Doc. 128-1–128-5; Doc. 150-1–150-4.)

## II.   Legal Standards

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The Supreme Court explains the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotation marks omitted).   The movant may meet this burden by presenting evidence that would be admissible at trial, indicating there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence supporting some elements of its case on which it bears the ultimate burden of proof.   Id. at 322–24.

"If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).   Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   Discussion

The Court liberally construes the SAC as raising four remaining counts:   (1) individual Eighth Amendment deliberate indifference claims against Dr. Hemphill, ARNP Blankenship, Dr. Berrios, and Nurse Jenks; (2) an ADA claim against Wexford; (3) two First Amendment retaliation claims against Dr. Berrios; and (4) state-law concert of action and aiding and abetting claims against Dr. Hemphill, ARNP Blankenship, Dr. Berrios, Nurse Jenks, and Wexford.   (See Doc. 128 at 3.) Each cause of action will be addressed separately.[2]

---

[2] The defendants have provided a 63-page record to support their motion for summary judgment.   (Doc. 128-1–Doc. 128-5.)   In response, Plaintiff has provided 99 pages of exhibits.   (Doc. 150-1–150-5.)   While most of the facts are generally helpful for offering context and background for the claims, not every fact offered by the parties is material to the remaining counts.   Therefore, the Court will not separately discuss each factual allegation.   Rather, it will set out and consider the relevant material facts (disputed and undisputed) as it addresses each of Plaintiff's counts.

**A.     The individual medical defendants are not entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims.[3]**

Plaintiff asserts that Defendants Hemphill, Blankenship, Berrios, and Jenks (collectively, "medical defendants") were each deliberately indifferent to his serious medical needs by providing only three single-use catheters per week (and requiring him to wash and re-use them) instead of the six-per-day prescribed by his prior physician.   He asserts that this caused him pain and led to several urinary tract infections.

The following facts are relevant to this claim and, unless indicated otherwise, are either undisputed, supported by record evidence, or both:   Due to a 2009 gunshot injury, Plaintiff must self-catheterize (self-cath).   (Doc. 48 at 3, ¶ 11.)   In the summer of 2013, while Plaintiff was incarcerated at the Broward County Jail, Urologist Dr. Reda F. Sorial prescribed single-use catheters for Plaintiff.   (Doc128-3 at 3.)[4]   On July 10, 2014, while Plaintiff was incarcerated at Martin Correctional

---

[3] The Court is aware that in a deliberate indifference count, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). However, in their motion, the medical defendants collectively assert their entitlement to summary judgment on the deliberate indifference claims, and they do not allege that any specific defendant is less (or more) culpable than any other. (Doc. 128 at 9–13).   Likewise, Plaintiff asserts that all the medical defendants were aware of, and disregarded, his need for more catheters.   (Doc. 48.)   Accordingly, the Court collectively addresses the deliberate indifference claims, but recognizes that Plaintiff has the burden at trial of proving deliberate indifference against each separate defendant.

[4] Plaintiff alleges that Dr. Sorial prescribed six catheters per day.   The defendants argue that Dr. Sorial did not specify the number of catheters Plaintiff needed per day.

Institution, non-defendant ARNP T. Patten wrote a physician's order for Plaintiff to receive six non-latex catheters per day. (Doc. 150-1 at 5.)[5] Plaintiff was transferred to CCI on January 20, 2015. (Doc. 48 at 3, ¶ 13.) Dr. Hemphill examined Plaintiff on January 22, 2015. (Id. at ¶ 16; Doc. 128-3 at 4.) Plaintiff gave Dr. Hemphill the pass from Martin Correctional but Dr. Hemphill consulted with a nurse[6] who told Plaintiff that CCI could not afford to provide him with six catheters per day, and would instead provide only three per week. (Doc. 48 at 4, ¶ 21.) Dr. Hemphill wrote in his notes that he provided Plaintiff with the supplies recommended by the nurse. (Doc. 128-3 at 4.) The nurse gave Plaintiff three disposable single-use catheters, three pairs of gloves, and three packets of lubricant and informed Plaintiff that they must last a week. (Doc. 48 at 5, ¶ 24.) Both the nurse and Dr. Hemphill told Plaintiff that the catheters would be suitable for re-use if washed. (Id. ¶ 25.) On February 5, 2015, ARNP Blankenship and Nurse Jenks examined Plaintiff and diagnosed him with a suspected urinary tract infection

---

[5] This document appears to be the "pass" that Plaintiff references in the SAC. (Doc. 48 at 3, 4 at ¶¶ 15–17, 19.) The document is tilted "Florida Department of Corrections Physician's Order Sheet," is stamped by Nurse Practitioner (ARNP) T. Patten, and orders six non-latex fourteen-inch straight catheters and six packs of cleaning wipes per day, as well as seven packs of lubricant per week. (Doc. 150-1 at 5.) In his response (Doc. 151), Plaintiff directs the Court to his medical record showing that ARNP Patten reviewed the record from Dr. Sorial on November 19, 2014. (Doc. 150-1 at 6.)

[6] Plaintiff asserts in his amended complaint that Dr. Hemphill consulted with Nurse Jenks. (Doc. 48 at 4, ¶¶ 19, 21.) However, Dr. Hemphill's notes states that he consulted with Nurse Durand during this visit, not Nurse Jenks. (Doc. 128-3 at 4.) However, Plaintiff has offered a declaration that Dr. Hemphill consulted with Nurse Jenks at the initial visit. (Doc. 150-4 at 3.) To the extent the identity of the nurse with whom Dr. Hemphill consulted at this visit is material, the Court finds it disputed.

(UTI).   (Doc. 128-3 at 8; Doc. 48 at 6, ¶ 29–30.)   Plaintiff informed ARNP

Blankenship that he self-cathed four or five times daily and was concerned about

reusing the catheters.   (Doc. 128-3 at 8.)   Plaintiff asserts that ARNP Blankenship

requested that Plaintiff be provided more catheters, but Nurse Jenks refused, and

ARNP Blankenship complied.   (Doc. 151 at 4.)   Plaintiff was instructed about the

importance of proper water intake, a healthy diet, and good hygiene to ensure that

he understood how to properly self-cath.   (Doc. 128-3 at 8.)   ARNP Blankenship

prescribed an antibiotic to treat the suspected UTI.   (Id. at 9–10.)   On March 27,

2015, Dr. Hemphill wrote a note in Plaintiff's chart: "We received a call from Dr.

Sorial.   I cannot return the call because I do not have a signed release of

information form.   IM apparently wants more urinary catheters.   Discussed with

[undecipherable]."   (Doc. 150-1 at 9.)

There is another disputed issue of material fact that may be relevant to

Plaintiff's deliberate indifference claims.   The defendants assert that "[s]ubsequent

to February 23, 2015, the only other time that Plaintiff tested positive for a

suspected urinary tract infection at CCI was nearly one and a half years later, on

June 17, 2016."   (Doc. 128 at 6, ¶ 20.)   However, Plaintiff asserts in his response to

the motion for summary judgment that the record shows he "tested positive for

[UTI] and treated with antibiotics on different dates other than the one defendants

stated."   (Doc. 151 at 15.)   Plaintiff directs the Court to medical records from May

15, 2015, June 30, 2015, June 1, 2015, February 5, 2015, December 16, 2015, June

2, 2015, June 9, 2015, and May 2, 2015.   (Doc. 150-1 at 1, 6, 8, 10, 14, 17, 22, and

26.)   The defendants argue that the records "do not say [what he claims they do]"

and assert that Plaintiff has not attached anything "to corroborate that his Exhibit 'A' evidences additional instances of urinary tract infection." (Doc. 152 at 3.) However, the records do appear to show that Plaintiff was prescribed antibiotics on those dates. Further, Plaintiff (who presumably knows what he was diagnosed with and the reason for the antibiotic prescriptions) has filed a sworn statement asserting that he was diagnosed with UTIs on at least one occasion other than those listed by the defendants. (Doc. 150-4 at 6–7.) Therefore, the Court considers the number of UTIs experienced by Plaintiff during the 17 months he was incarcerated at CCI to be disputed.

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).[7] For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to that serious medical need. See Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted); see also Wade v. McDade, 106 F. 4th 1251, 1255 (11th Cir.

---

[7] The parties do not dispute that Plaintiff's need to self-cath is a serious medical need.

2024)-.   Recently, however, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994) and clarified that courts in this circuit should apply the "subjective recklessness standard" as used in criminal law.   See Wade, 106 F.4th at 1253. Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First...as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.' " [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so, he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff – with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844-45.

Id. at 1262.[8]   The Wade court provided guidance about the type of actions (or inactions) that could amount to subjective recklessness, noting that the Supreme Court has "underscored that criminal recklessness denotes a state of mind marked by one's subjective awareness of a risk that results from his own conduct."   Id. at *6.   Citing and quoting Justice Kagan's plurality opinion in Borden v. United States, 593 U.S. 420, 427 (2021), the Eleventh Circuit explained that "[a] person

---

[8]  In his concurring opinion, the Honorable Alberto Jordan found that to the extent prior Eleventh Circuit deliberate indifference cases or not inconsistent with Wade, "they should continue to be cited as binding precedent."   Wade, 106 F.4th at 1265 (Jordan, J., concurring).

acts recklessly, in the most common formulation, when he consciously disregards a substantial and unjustifiable risk *attached to his conduct*, in gross deviation from accepted standards." Wade, 106 F.4th at 1261.(emphasis in Wade)(citations and quotation marks omitted).   It is under this standard of review that the Court evaluates the medical defendants' conduct.

The medical defendants argue that Plaintiff has not provided any evidence "that could lead a reasonable trier of fact to conclude that violations under the Eighth Amendment have occurred."  (Doc. 128 at 12.)   The Court disagrees.   In addition to his medical records, Plaintiff obtained from the manufacturer the literature provided with Cololast Self-Cath single-use catheters.   (Doc. 150-2.) The literature contains a clear warning stating:

> Reusing this single-use product may create a potential harm to the user.  **Reprocessing, washing, disinfection, and/or sterilization may compromise product characteristics, causing additional risk of physical harm to or infection of the user.**

(Id. at 4.)   The two-page pamphlet contains at least four warnings against reusing the single-use catheters.   (Id. at 4–5.)   And the Court notes that the medical evidence shows (and the defendants do not dispute) that Plaintiff reported the need to self-cath about four or five times per day.   Therefore, because he received only three single-use catheters per week, Plaintiff was required to wash and reuse each catheter at least ten times.   In addition, Dr. Hemphill received a telephone call from Dr. Sorial, Plaintiff's former urologist, regarding the catheters, which Dr. Hemphill did not return for lack of a release form from Plaintiff.   Instead of seeking a release from Plaintiff so that he could return Dr. Sorial's call, Dr.

Hemphill consulted with a nurse (the results of the consultation are not transcribed).   The medical records do not indicate whether Dr. Hemphill ever returned Dr. Sorial's call.

"Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.' "   Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting Farmer, 511 U.S. at 842).   And whether the defendants disregarded that "substantial risk" is "also a question of fact that can be shown by standard methods."   Goebert, 510 F.3d at 1327.   Here, a jury could well find that the medical defendants rejected Plaintiff's requests for additional catheters, not because they were in any way indifferent to his needs, but because they believed that the reduction in the number of catheters provided was medically justifiable.   But a jury could also reasonably conclude that each of the medical defendants subjectively knew of and unreasonably disregarded an excessive risk to Plaintiff's health "in gross deviation" from accepted standards.   Wade, 106 F.4th at 1261.   There is conflicting evidence about whether the decision to reduce the number of single-use catheters provided to Plaintiff from six-per-day to three-per-week was medically justifiable, and there is no evidence suggesting that the defendants returned Dr. Sorial's call, read the literature from the catheter's manufacturer, or took any other steps to investigate or verify whether it was medically appropriate for Plaintiff to reuse each single-use catheter at least ten times.   In Goebert, the Eleventh Circuit

noted that " '[a] party that willfully blinds itself to a fact . . .can be charged with constructive knowledge of that fact.' "   510 F.3d at 1328 (quoting United States v. Baxtr Int's, Inc., 345 F.3d 866, 902 (11th Cir. 2003)).

The defendants also argue that summary judgment is warranted because, without an expert witness to testify to such, Plaintiff cannot show that the defendants' misconduct was the proximate cause of his UTIs.   (Doc. 128 at 12–13.) But the causation element of a section 1983 claim requires a plaintiff only to show "that a defendant [has] a causal connection to the *constitutional harm*."   Goebert, 510 F.3d at 1327 (emphasis added); Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) ("A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation."). And this "constitutional harm" can be the wanton infliction of unnecessary pain. See Estelle v. Gamble, 429 U.S. 97, 104 (1972) (finding it well settled that the deliberate indifference to a prisoner's serious medical need constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment); Mandel v. Doe, 888 F.2d 783, 788, 789 (11th Cir. 1989) ("This court has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference[,and] medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."); McEligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain

resulting from his or her illness."); see also Boretti v. Wiscomb, 930 F.2d 1150, 1154–55 (6th Cir. 1991) (recognizing that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering.").

Here, Plaintiff alleges harm other than an actual UTI.   He has offered record evidence showing that he repeatedly visited the medical department complaining about the pain or discomfort he experienced from reusing single-use catheters. There is a question of fact as to whether it was reasonable for the defendants to require Plaintiff to reuse each single-use catheter at least ten times and there is a question of fact as to whether Plaintiff experienced pain from doing so.[9]   Moreover, Plaintiff has provided evidence from the catheter manufacturer stating that washing and reusing the single-use catheters (even once) could result in infection to the user.   A reasonable jury could find that the defendants' refusal to provide any care (or greatly reduced care) for Plaintiff's complaints amounted to the wanton infliction of pain— a stand-alone constitutional violation.   Thus, the lack of an expert to specifically tether the re-use of the single-use catheters to actual infections may limit the amount of Plaintiff's damages, but does not spell the end of his

---

[9] Plaintiff does not raise a deliberate indifference claim against Wexford but does assert that the defendants did not provide adequate catheters because of "Wexford's Custom and Policy of saving money at the expense of the patient."   (Doc. 48 at 6.)   The defendants assert that Plaintiff has not supported his allegation of the existence of a "Custom and Policy of putting profit over people."   (Doc. 128 at 10.)   However, Plaintiff has offered Defendant Jenks's alleged statement that Charlotte Correctional Institution could not afford to provide him six catheters. (Doc. 150-4 at 3.)   Accordingly, a material issue of fact remains as to the reasons for the medical defendants' reluctance to provide more single-use catheters.

deliberate indifference claims against the individual medical defendants.   The defendants' motion for summary judgment is denied as to the deliberate indifference claims against Dr. Hemphill, ARNP Blankenship, Dr. Berrios, and Nurse Jenks.

### B. Dr. Berrios is entitled to summary judgment on Plaintiff's retaliation claims.

Plaintiff alleges retaliation in Count Seven of the SAC, but the facts underlying the claim, as well as the identity of the specific defendants against whom the claim is raised are unclear.   (Doc. 48 at 5–16.)   The defendants assert (and Plaintiff does not argue otherwise in his response) that the retaliation claim is raised against Dr. Berrios and based on two separate incidents of retaliation:   (1) a two-month revocation of Plaintiff's cane pass; and (2) Dr. Berrios' unsatisfactory responses to Plaintiff's grievances.   (Doc. 128 at 15.)[10]

To support his claims, Plaintiff asserts that he was seen by Dr. Berrios on June 2, 2015.   (Doc. 48 at 8, ¶ 39.)   Plaintiff asserts that Dr Berrios told him that he could not provide the number of catheters sought and that "he would intentionally ignore the urologist's prescribed treatment."   (Id.)   Plaintiff told Dr.

---

[10]   The defendants assert that this claim is also raised against Wexford. (Doc. 128 at 3.)   A review of the SAC does not support such a conclusion. Moreover—given that respondeat superior liability is not usually cognizable under section 1983—it is unclear how a corporation could engage in retaliation—especially since Plaintiff asserts that his harm was caused by Wexford's <u>pre-existing</u> policy of not paying for an adequate number of catheters.   Thus, even if Plaintiff intended to raise a First Amendment retaliation claim against Wexford, the claim would be dismissed under Rules 8 and 10 of the Federal Rules of Civil Procedure and for failure to state a claim on which relief may be granted.   28 U.S.C. § 1915(e)(2)(B)(ii).

Berrios that he "was in pain and could barely walk or function on a daily basis." (Id. ¶ 40)   Plaintiff alleges that Dr. Berrios told him that the medical department was tired of his grievances and "things would change if he continued."   (Id. ¶ 43.) Plaintiff asserts that "Defendant Berrios then retaliated against Plaintiff by depriving him access to his cane stick and did not follow up on the urologist order of treatment."   (Id. ¶ 44.)

Under the First Amendment, a prison official may not retaliate against a prisoner for exercising his right to free speech.   Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).   And "[a] prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment."   Id. (internal quotation omitted). "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech."   O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations and alterations omitted). While mindful that a plaintiff may not be held to a heightened burden of proof on a retaliation claim, see Crawford-El v. Britton, 523 U.S. 574, 580–86 (1998) (holding that the prisoner is not required to show "clear and convincing" evidence of a defendant's unconstitutional motives in a retaliation claim), courts approach prisoner claims of retaliation "with skepticism and particular care" due to the near inevitability that prisoners will take exception with the decisions of prison officials

and the ease with which claims of retaliation may be fabricated.   Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Plaintiff has satisfied his burden of proof on the first element of a First Amendment claim.   It is well settled law that the First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits.   Green v. Mowery, 212 F. App'x 918, 919 (11th Cir. 2006); Redd v. Conway, 160 F. App'x 858, 862 (11th Cir. 2005).   However, showing whether he actually suffered an adverse action as a result of his grievances is problematic for Plaintiff.

Dr. Berrios points out that Plaintiff's cane was taken away on April 19, 2015—long before he (Dr. Berrios) allegedly threatened Plaintiff with retaliation on June 2, 2015.   (Doc. 128 at 16.)   Plaintiff now argues that the defense states "false and very much misleading facts," and that "the reasons WHY the cane was confiscated from Plaintiff did not become apparent until Plaintiff was being seen on June 2, 2015."   (Doc. 151 at 13.)   A review of Plaintiff's SAC does not support a conclusion that Dr. Berrios is being misleading in the motion for summary judgment or has "misstated the facts of Plaintiff's claim."   (Doc. 151 at 13.) Plaintiff clearly states (or clearly suggests) in his SAC that his cane was taken away after his June 2, 2014 appointment with Dr. Berrios and after Dr. Berrios threatened him about filing grievances.   (Doc. 48 at 8, ¶ 44.)   Plaintiff cannot now amend the facts in his SAC in his response to the defendants' motion for summary judgment.   Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir.

2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").   Moreover, Plaintiff's medical records contain two notations from non-defendant Nurse Donegan stating that Plaintiff was seen "walking very briskly with a steady gait to [the] lunch and canteen line without cane." (Doc. 128-3 at 13.)   As a result, the "cane [was] confiscated from [Plaintiff] for non-use/misuse of cane."   (Id.)   Thus, as it appeared to staff members, Plaintiff's possession of the cane was unnecessary and violated prison rules.   In short, even if some impermissible reason had entered into the unidentified staff member's decision to confiscate Plaintiff's claim (a finding not made by this Court), the cane would still have been taken away.   Therefore, any inference of a causal connection between Plaintiff's grievances about catheters and the confiscation of his cane is broken because the adverse action suffered by Plaintiff was a direct response to Plaintiff's ability to walk without it.   See e.g. Smith v. Mosley, 532 F.3d 1270 (11th Cir. 2008) (finding that if a prisoner would have been subject to the same discipline in the absence of protected speech, the retaliation claim will fail); O'Bryant v. Finch, 637 F.3d 1207, 1220 (11th Cir. 2011) (recognizing that "[a]ny possible causal connection between the protected activity (the grievances) and the harm . . . is severed since the harm is not in reaction to any protected activity, but directly due to an improper activity"); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (addressing a prisoner's retaliation claim, and explaining that, "if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone"); Smart v. England, 93 F.4th 1283, 1289–90 (11th Cir. 2024) ("[A] prisoner's violation of a prison regulation is

unprotected by the First Amendment."). Moreover, when Plaintiff grieved the confiscation of his cane—on the basis that his need for it was intermittent—Dr. Berrios reviewed the grievance and ordered a new cane pass. (Doc. 128 at 20.) Based on the record before the Court, no reasonable jury could find that Plaintiff satisfied the second or third elements of a retaliation claim against Dr. Berrios based upon the confiscation of Plaintiff's cane, and Dr. Berrios is entitled to summary judgment on this claim.

Likewise, Plaintiff's retaliation claim against Dr. Berrios regarding the number of catheters he received is illogical. Plaintiff appears to allege that Dr. Berrios's denied his grievance in retaliation for filing it in the first place. But there is no standalone cause of action for denial of a grievance. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (recognizing that a prison grievance procedure "does not confer any substantive right upon the inmates"). And it is axiomatic that the mere risk that a grievance will be denied is not the type of retaliation that "would likely deter a person of ordinary firmness from engaging in such speech" in the first place. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). In short, to the extent Plaintiff alleges that Dr. Berrios improperly limited the number of single-use catheters provided each week, the cause of action lies in the Eighth—not the First—Amendment. Summary judgment is granted in favor of Dr. Berrios on this First Amendment retaliation claim as well.

### C. Wexford is not entitled to summary judgment on Plaintiff's ADA Claims.

When Wexford moved to dismiss Plaintiff's ADA claim, the Court discussed

and denied the motion as follows:

> In Count VI, Mr. Baxter asserts a discrimination claim for violating Title II of the ADA. 42 U.S.C. §§ 12131–12165.[FN] To establish a prima facie case under the ADA, Mr. Baxter must show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." Lonergan v. Fla. Dep't of Corrections, 623 F. App'x 990, 992 (11th Cir. 2015) (citing Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)). A plaintiff may bring an ADA claim based on a theory that a defendant did not reasonably accommodate the plaintiff's disability. Id. at 992, 994 (citing Schwarz v. City of Treasure Isl., 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (finding the failure of a correctional institution to provide the plaintiff treatment prescribed by his dermatologist was sufficient to plead a prima facie ADA discrimination claim)).
>
> > [FN] Count VI also includes allegations that Wexford was deliberately indifferent to Mr. Baxter's serious medical needs, potentially to set up a separate deliberate indifference claim. (Doc. 48 at ¶¶ 84–85.) Despite these conflated allegations, Mr. Baxter does not assert a discrete deliberate indifference claim in Count VI. Wexford has apparently moved to dismiss a deliberate indifference claim in an abundance of caution. After careful review, the Court does not interpret the complaint as intending to assert a cause of action for deliberate indifference against Wexford (in Count VI or elsewhere). Therefore, there is nothing to dismiss. The Court's analysis here is therefore limited to the ADA discrimination claim, in accordance with Mr. Baxter's labeling of Count VI.[11]

---

[11] Once again, the Court does not interpret the SAC as asserting a

Wexford argues that medical treatment decisions cannot serve as the basis for claims under the ADA.   (Doc. 49 at 13.)   While mere disagreement with medical treatment decisions may not support claims under the ADA, the failure of prison medical personnel to provide a prisoner with prescribed accommodations in favor of an alternative remedy that does not provide sufficient treatment may be enough for a plaintiff to plead a prima facie case.   See Lonergan, 623 F. App'x at 994 (reversing dismissal of complaint where plaintiff pleaded that a prison's medical personnel provided an insufficient alternative remedy to that prescribed by his dermatologist).

According to the complaint, a urologist prescribed Mr. Baxter a specific regimen of self-catheterization.   (Doc. 48 at ¶ 12.)   Mr. Baxter alleges that Wexford personnel did not honor his previously received medical passes based on a urologist's prescription and only provided him with half his weekly supply of catheters based on the institution's alleged cost-savings policy.   (Id. at ¶¶ 37–38.)   Thus, Mr. Baxter successfully alleges more than mere disagreement with his medical treatment—he alleges a failure to provide treatment ordered by a urologist.   There is no allegation of a new diagnosis that would cause Mr. Baxter's recommended treatment regimen to change.   Thus, Mr. Baxter has met his burden of pleading Count VI.

(Doc. 75 at 5–7.)   The defense now argues that—contrary to the Court's findings in its order on the motion to dismiss—Plaintiff merely disagrees with the medical treatment rendered by the defendants.   (Doc. 128 at 14.)   They assert that the facts show that the defendants followed the treatment ordered by urologist Dr.

---

standalone cause of action for deliberate indifference against Defendant Wexford. However, the Court notes that Plaintiff is no longer being held at Charlotte Correctional Institution, rendering moot any claims for injunctive relief under the ADA.   And proof of an ADA violation generally entitles a plaintiff to only injunctive relief.   See Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 831 (11th Cir. 2017). To get damages, Plaintiff must "prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.' " Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019). Therefore, to the extent he seeks damages, Plaintiff's burden is not lessened by raising this claim under the ADA instead of the Eighth Amendment.

Sorial and that Plaintiff has not provided evidence of any cost-savings policy.   (Id.)
However, the number of catheters initially prescribed by Dr. Sorial is a disputed
issue of material fact.   And Plaintiff offers a sworn statement that he was told by
Nurse Jenks and other medical providers that the budget would not allow for six
catheters per day.   (Doc. 150-4 at 3.)   Moreover, it is undisputed that the
defendants provided Plaintiff only three single-use catheters per week, even though
Plaintiff told staff members that he self-cathed four or five times per day.   This
Court must view all the evidence— and all factual inferences reasonably drawn
from the evidence—in the light most favorable to the nonmoving party.   Hairston v.
Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993),   The defendants offer
absolutely no reason for rationing single-use catheters, and therefore, it can be
reasonably inferred from the evidence before the Court that the denials were based
upon budgetary concerns.   And after drawing that inference, the Court must deny
the defendants' motion for summary judgment as it relates to Plaintiff's ADA
claims.

> ### D.   Plaintiff's state-law claims are dismissed as time-barred.

The defendants argue that they are entitled to summary judgment on
Plaintiff's claims for concert of action and aiding and abetting because there is
simply "no evidence [of] underlying tortious conduct or assistance in the commission
of a tort."   (Doc. 128 at 17.)   The defense further argues that "[t]he alleged
underlying tort in both the concert of action and abetting counts appears to be that
all Defendants worked in concert to implement Wexford's cost-savings policy in a
manner that caused harm to Plaintiff."   (Doc. 128 at 18.)   Indeed, Plaintiff does not

identify the underlying tort to support these state law tort claims, arguing only that the defendants conspired to deprive him of adequate catheters and alleging that the Court has "already found that Defendants provided Plaintiff with only three (3) catheters per week," which he alleges proves his point.   (Doc. 151 at 14.)[12]   In short, by arguing that it was medically unjustifiable for the defendants to order him to wash and reuse single-use catheters, Plaintiff questions their medical judgment. But to the extent Plaintiff bases these claims on medical negligence or malpractice, they must be dismissed for the same reasons explained in the Court's June 7, 2022 order.   (Doc. 87.)   See Paulk v. National Medical Enterprises, Inc., 679 So. 2d 1289, 1290 n.3 (Fla 4th DCA 1996) ("It seems to us that the intent expressed in [the text of chapter 766] is to extend the statute whenever the medical judgment of the provider is being challenged.").   In short, Plaintiff may not use these state causes of actions as a back door to raise untimely and unexhausted medical malpractice claims in state court, which is precisely what he attempts here.   Therefore, Plaintiff's state law tort claims are dismissed as time-barred and for failing to comply with Chapter 766, Florida Statutes.   See discussion docket entry 87; see also Simpson v. Florida, 708 F. App'x 635, 636 (11th Cir. 2018) ("A district court may properly dismiss a § 1983 complaint sua sponte, without requiring any responsive pleadings, for failure to state a claim if the action would be barred by the state's statute of limitations.").

---

[12] To clarify, the Court recognized in its earlier order that the defendants provided Plaintiff with only three single-use catheters per week.   (Doc. 149 at 16.) This is a fact that is not disputed by the defense.   The Court expressed no opinion as to whether any defendant's actions were tortious.

### IV.   Conclusion

Accordingly, it is now **ORDERED:**

1.   The defendants' motion for summary judgment (Doc. 128) is

**GRANTED in part and DENIED in part.**   The motion is **DENIED** as to

Plaintiff's Eighth Amendment deliberate indifference claims against the individual

medical defendants.   The motion is **DENIED** as to Plaintiff's ADA claim against

Defendant Wexford.   The motion is otherwise **GRANTED.**

2.   Within **THIRTY-FIVE (35) DAYS** from the date of this Order

Plaintiff shall file with the Court and serve upon the defendants a pretrial

narrative statement.   The Pretrial Narrative Statement shall contain:

(a)   A brief general statement of the case;

(b)   A narrative written statement of the facts that will be offered by oral or documentary evidence at trial;

(c)   A list of all exhibits to be offered into evidence at the trial of the case;

(d)   A list of the full names and addresses and places of employment for all the non-inmate witnesses that Plaintiff intends to call (Plaintiff must notify the Court of any changes in their addresses);

(e)   A list of the full names, inmate numbers, and places of incarceration for all the inmate witnesses that Plaintiff intends to call (Plaintiff must notify the Court of any changes in their places of incarceration);

(f)   A summary of the anticipated testimony of each witness named in (d) and (e);

(g)   A stipulation of facts/issues to be tried; and

(h)   An estimated length of trial.

3.      Within **FOURTEEN (14) DAYS** from the date Plaintiff files his Pretrial Narrative Statement, the defendants shall file and serve upon Plaintiff a Pretrial Narrative Statement that complies with paragraph 2.

4.      After both sides have filed a pretrial narrative statement, the Court will enter a separate order setting the trial term and other pretrial deadlines.

5.      At this point, the parties should strongly consider settlement discussions.[13]   If the parties engage in settlement discussions, the Court requests that a joint notice be filed to notify the Court.   Upon filing of any notice of settlement discussions, the Court would also entertain a motion to stay the deadlines in this case.

**DONE AND ORDERED** in Fort Myers, Florida on September 18, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

SA:   FTMP-2
Copies: Sadik Baxter, counsel of record

---

[13] This case has been pending for more than six years.   As noted by the Court in its April 11, 2024 order (Doc. 149 at 16), this protracted litigation seems unnecessary and is undoubtedly resulting in considerable attorney's fees and costs for the defendants.   After engaging in an unsuccessful telephone settlement conference on February 13, 2023, the parties informed the Court that they were interested in a settlement conference before a mediator.   (Doc. 109; Doc. 110.) This Order now streamlines the remaining issues and evidence.   Given the smaller subset of remaining viable claims, the Court urges the parties to now consider an in person good-faith settlement discussion.   If a second, in person, settlement discusssion is unsuccessful, the Court may, sua sponte or upon motion, consider ordering a settlement conference before a Magistrate Judge.